No. 05-248C
(Judge Wheeler)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JONATHAN ASTOR, et al.,

Plaintiffs,

vs.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

FRANKLIN E. WHITE, JR.
Assistant Director

TARA K. HOGAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W.,
Attn: Classification Unit, 8th floor
Washington, D. C. 20530
Tele: (202) 616-2228
Fax: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

MARGARET WRIGHT
Office of Chief Counsel
Federal Law Enforcement Training Center
Building 94, Suite 100
Glynco, GA

May 18, 2007

## TABLE OF CONTENTS

DEFENDANT'S BRIEF ..... 1

STATEMENT OF THE ISSUES ..... 1

STATEMENT OF THE CASE ..... 2

I. Nature Of The Case ..... 2

STATEMENT OF FACTS ..... 2

SUMMARY OF THE ARGUMENT ..... 3

ARGUMENT ..... 3

I. Standard Of Review ..... 3

II. The United States Is Entitled To Summary Judgment Because FLETC Instructors Are Teachers Engaged In The Imparting Of Knowledge In An Educational Establishment, And, Thus, Are FLSA Exempt Under The "Professional" Exemption ..... 4

A. FLETC Instructors Are Teachers Engaged In The Imparting Of Knowledge ..... 8

1. The Instructors' Job Duties Consist Of Teaching Firearms Classes And Work Ancillary To Teaching ..... 8

2. Courses And Course Development ..... 12

3. Job Requirements and Training ..... 14

B. FLETC Is An Educational Establishment ..... 16

II. Assuming That The United States Is Not Entitled To Summary Judgment Upon All Claims Raised in The Complaint, The United States Is Entitled To Partial Summary Judgment Upon Plaintiffs' Claims For Prejudgment Interest Pursuant To The Back Pay Act ..... 18

CONCLUSION ..... 21

# TABLE OF AUTHORITIES

## CASES


Abundis v. United States,
18 Cl. Ct. 657 (1989) .......... 6, 16

Adams v. United States,
27 Fed. Cl. 5 (1992) .......... 5

Adams v. United States,
40 Fed. Cl. 303 (1998) .......... 5

Adams v. United States,
48 Fed. Cl. 602 (2001) .......... 20

Am. Fed'n of Gov't Employees v. OPM,
821 F.2d 761 (D.C. Cir. 1987) .......... 16

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .......... 4

Angelo v. United States,
57 Fed. Cl. 100 (2003) .......... 19

Avenal v. United States,
100 F.3d 933 (Fed. Cir.1996) .......... 4

Bates v. United States,
60 Fed. Cl. 319 (2004) .......... 6

Berg v. Newman,
982 F.2d 500 (Fed. Cir. 1992) .......... 6, 8

Berg v. United States,
49 Fed. Cl. 459 (2001) .......... 16

Blackfeet Nat'l Bank v. Rubin,
890 F.Supp. 48 (D.D.C. 1995) .......... 7

Brooklyn Savings Bank v. O'Neil,
324 U.S. 697 (1945) .......... 20

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .......... 3, 4

Doyle v. United States,
931 F.2d 1546 (Fed. Cir. 1991) .......... 19

Eastern Transportation Co. v. United States,
272 U.S. 675 (1927) .......... 19

Gonzales v. New Engl. Tractor Trailer Training Sch.,
932 F. Supp 697 (D. Md. 1996) .......... 15

Library of Congress v. Shaw,
478 U.S. 310 (1986) .......... 19

Monon Corp. v. Stoughton Trailers, Inc.,
239 F.3d 1253 (Fed. Cir. 2001) .......... 4

Muller v. American Mgmt. Ass'n Int'l,
368 F. Supp.2d 1166 (D. Kan. 2004) .......... 16

Skidmore v. Swift & Co.,
323 U.S. 134 (1944) .......... 17

Solar Turbines, Inc. v. United States,
23 Cl. Ct. 142 (1991) .......... 3, 4

Sweats Fashions, Inc. v. Pannill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) .......... 4

United States v. Sherwood,
312 U.S. 584 (1941) .......... 18

Wilks v. District of Columbia, et al.,
712 F. Supp. 1383 (D.D.C. 1989) .......... 16

Zumerling v. Devine,
769 F.2d 745 (Fed. Cir. 1985) .......... 5

Zumerling v. Marsh,
783 F.2d 1032 (Fed. Cir.1986) .......... 19

## STATUTES and REGULATIONS

5 U.S.C. § 5596 .................................................. 18, 19, 20

29 U.S.C. § 203(e)(2) .................................................. 5

29 U.S.C. § 204(f) .................................................. 5

29 U.S.C. § 207(a) .................................................. 4

29 U.S.C. § 213(a)(1) .................................................. 5

29 U.S.C. § 216(b) .................................................. 20

29 U.S.C. § 260 .................................................. 20

5 C.F.R. § 551.102(a) .................................................. 5

5 C.F.R. § 551.201 .................................................. 5

5 C.F.R. § 551.202(i) .................................................. 8, 16

5 C.F.R. § 551.207 .................................................. passim

29 C.F.R. 541.303(a) .................................................. 7, 15, 16

29 C.F.R. 541.204(b) .................................................. 16, 17

## OTHER AUTHORITIES

71 Fed. Reg. 30301 (May 26, 2006) .................................................. 7

Pub. L. 100-202 § 101(m) .................................................. 21

DOL Op. Letter,
2004 WL 2146934 (June 2, 2004) .................................................. 17

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JONATHAN ASTOR, et al., | ) | |
| Plaintiffs, | ) | |
| vs. | ) | No. 05-248C (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to the scheduling order of this Court dated April 18, 2007, and Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits its motion for summary judgment. As set forth below, the Court should grant summary judgment in favor of defendant because there are no material facts in dispute and, therefore, the United States is entitled to judgment in its favor as a matter of law. In support of this motion, we rely upon this brief, the accompanying appendix filed under seal,[1] the plaintiff's complaint, and our proposed statement of uncontroverted facts, filed concurrently with this motion pursuant to RCFC 56(h)(1).

**DEFENDANT'S BRIEF**

STATEMENT OF THE ISSUES

(1) Whether the United States is entitled to summary judgment upon all of the plaintiffs' claims because, as instructors in the Firearms Division of the Federal Law Enforcement Training Center, plaintiffs are teachers covered by the professional exemption, 5 C.F.R. § 551.207 (2006), and thus, are exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA").

[1] Because the appendix contains material (1) subject to the Privacy Act and/or (2), contains law-enforcement sensitive material, the appendix is filed under seal pursuant to the protective order entered into on January 10, 2006.

(2) Whether, in the alternative, the United States is entitled to summary judgment upon plaintiff's clams for prejudgment interest, pursuant to the Back Pay Act, upon any money that they might be awarded in this action.

## STATEMENT OF THE CASE

### I. Nature Of The Case

The plaintiffs are forty-five current and former GS-12 and GS-13 instructors who teach firearms courses at the Federal Law Enforcement Training Center ("FLETC"), a bureau within the Department of Homeland Security ("DHS").[2] Compl. ¶ 1.[3] Plaintiffs allege that DHS improperly denied them time-and-a-half overtime pay pursuant to the FLSA.[4] However, because plaintiffs are exempt from the overtime pay increases pursuant to the "teacher" professional exemption at 5 C.F.R. § 551.207, their claims are without merit and should be dismissed.

## STATEMENT OF FACTS

For its statement of facts, defendant relies upon defendant's proposed findings of fact ("PFUF"), filed concurrently with this brief. We provide the following as brief background. Plaintiffs are GS-12 and GS-13 instructors in the Firearms Division of FLETC, who are classified as FLSA exempt. All of the plaintiffs have significant prior law enforcement experience, as well as experience teaching or instructing adults. After September 11, 2001, FLETC instituted a six day training schedule, in order to meet the increased hiring of new

---

[2] One plaintiff, Debra Roberts, is not an Instructor, but is a GS-9 Training Technician. She is classified as FLSA non-exempt.

[3] "Compl." refers to the plaintiff's Fifth Amended Complaint, filed on January 18, 2006.

[4] Although the complaint seeks relief on "behalf of [plaintiffs] and other employees similarly situated," Compl. ¶ 1, plaintiffs have not sought class certification pursuant to RCFC 23.

Federal law enforcement officers. Instructors often worked one or two Saturdays a month, or in the evenings. For these scheduled hours in addition to the instructors' usual forty-hour work schedule, instructors were paid pursuant to title 5. Plaintiffs now claim that they are entitled to be compensated for the difference between the title 5 pay and FLSA overtime, as well as liquidated damages, prejudgment interest, attorneys fees and other relief.

## SUMMARY OF THE ARGUMENT

Plaintiffs are exempt from FLSA's overtime provisions because plaintiffs are exempt professionals. Specifically, OPM includes teachers who work in an educational establishment as professionals, pursuant to 5 C.F.R. § 551.207. Based upon the undisputed testimony, position descriptions, and other documents, and pursuant to the professional exemption, defendant is entitled to summary judgment. Plaintiffs are firearms instructors at the GS-12 and GS-13 levels whose primary responsibility is teaching all levels of students all aspects of firearms, including the safe use of firearms, accuracy, justifiable use, as well as advanced tactics. The bulk of an instructor's normal day-to-day work consists of teaching these classes and preparation for classes. Moreover, FLETC, which is the lead law enforcement training facility in the nation, meets the definition of "educational establishment." For these reasons, the responsibilities associated this position satisfy the requirements for FLSA's professional employee exemption.

## ARGUMENT

### I. Standard Of Review

Summary judgment is not "a disfavored procedural short cut, but rather . . . an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Solar Turbines, Inc. v. United States, 23 Cl. Ct. 142, 145 (1991)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Summary

judgment is a procedure "designed to protect the legitimate interest of all parties to a law suit by permitting the efficient disposition of claims that lack a sufficient basis." Solar Turbines, 23 Cl. Ct. at 145-146.

Summary judgment must be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." RCFC 56(c); Celotex, 477 U.S. at 322; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001); Avenal v. United States, 100 F.3d 933, 936 (Fed. Cir.1996). A "material fact" is one "that might affect the outcome of the suit under the governing law," and "summary judgment will not lie if the dispute about a material fact is 'genuine . . . .'" Anderson, 477 U.S. at 248. Irrelevant or unnecessary factual disputes, however, do not preclude the entry of summary judgment. Id.; Monon Corp., 239 F.3d at 1257.

The moving party must identify the legal and factual bases for its motion and specify those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1563 (Fed. Cir. 1987). The claims at issue may then be resolved by summary judgment unless the responding party establishes there is a factual dispute which must be tried. Anderson, 477 U.S. at 247-48; Sweats Fashions, 833 F.2d at 1562-63.

## II. The United States Is Entitled To Summary Judgment Because FLETC Instructors Are Teachers Engaged In The Imparting Of Knowledge In An Educational Establishment, And, Thus, Are FLSA Exempt Under The "Professional" Exemption

Pursuant to FLSA, employees working over forty hours per week must be paid overtime at one-and-one-half times their regular rate of pay. 29 U.S.C. § 207(a). However, Congress exempted from this requirement "any employee employed in a bona fide executive,

administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools)." 29 U.S.C. § 213(a)(1).

Section 4(f) of the FLSA distinguishes Federal Government employees as follows:

> Notwithstanding any other provision of this chapter, or any other law, the Civil Service Commission [now the Office of Personnel Management] is authorized to administer the provisions of this chapter with respect to any individual employed by the United States (other than an individual employed in the Library of Congress, United States Postal Service, Postal Rate Commission, or the Tennessee Valley Authority).

29 U.S.C. § 204(f).

The Fair Labor Standards Amendments of 1974 made the FLSA applicable to the Federal Government. 29 U.S.C. § 203(e)(2). As a result of the 1974 amendments, two separate entities interpret the FLSA exemption provisions. The Department of Labor ("DOL") promulgates regulations interpreting the scope of the FLSA as it applies to the private sector. See 29 U.S.C. § 204. OPM is the agency charged with responsibility for administration of the FLSA for any person employed by the Government of the United States. 29 U.S.C. § 204(f); 5 C.F.R. § 551.102(a); Zumerling v. Devine, 769 F.2d 745, 750 (Fed. Cir. 1985) ("OPM has been given the power to interpret the statute."). OPM regulations are "controlling" as to Federal employees. Adams v. United States, 27 Fed. Cl. 5, 11 (1992).

OPM has promulgated regulations which provide agencies with guidance regarding the payment of overtime pay pursuant to the FLSA. Pursuant to those regulations, any employee who meets the exemption criteria is exempt from FLSA overtime. 5 C.F.R. § 551.201. However, while OPM is not bound by DOL's interpretation of FLSA, Adams v. United States, 40 Fed. Cl. 303, 308 (1998) ("it is contrary to Congress' expressed wish to . . . requir[e] OPM to

precisely mimic DOL's every regulatory move"), this Court, where appropriate, may look to DOL's regulations for guidance. Bates v. United States, 60 Fed. Cl. 319, 321 n. 3 (2004) ("it is appropriate to look to them for persuasive guidance where the OPM regulations are unclear.") The defendant employer bears the ultimate burden of establishing the applicability of the FLSA exemptions. Abundis v. United States, 18 Cl. Ct. 657, 663 (1989); accord Berg v. Newman, 982 F.2d 500, 503 (Fed. Cir. 1992).

General Schedule employees may be exempted under the "Executive" exemption criteria, the "Administrative" exemption criteria, the "Professional" exemption criteria, or the "Foreign" exemption criteria. Congress did not define these exemptions by statute, but left that responsibility to DOL and OPM. OPM regulations define a "professional" as:

> an employee who meets all of the following criteria, or any teacher who is engaged in the imparting of knowledge or in the administration of an academic program in a school system or educational establishment.
>
> (a) Primary duty test. The primary duty test is met if the employee's work consists of--
>
> (1) Work that requires knowledge in a field of science or learning customarily and characteristically acquired through education or training that meets the requirements for a bachelor's or higher degree, with major study in or pertinent to the specialized field as distinguished from general education; or is performing work, comparable to that performed by professional employees, on the basis of specialized education or training and experience which has provided both theoretical and practical knowledge of the specialty, including knowledge of related disciplines and of new developments in the field; or
>
> (2) Work in a recognized field of artistic endeavor that is original or creative in nature . . . or
>
> (3) Work that requires theoretical and practical application of highly-specialized knowledge in computer systems analysis, programming, and software engineering . . .

> (b) Intellectual and varied work test. The employee's work is predominantly intellectual and varied in nature, requiring creative, analytical, evaluative, or interpretative thought processes for satisfactory performance.
>
> (c) Discretion and independent judgment test. The employee frequently exercises discretion and independent judgment, under only general supervision, in performing the normal day-to-day work.
>
> (d) 80-percent test. [applicable only to GS-5 and GS-6 employees]

5 C.F.R. § 551.207 (emphasis added).

Notably, the OPM regulations exempt teachers from the requirements of primary duty test, the intellectual and varied work tests, and discretion and independent judgment tests that apply to other professionals, in paragraphs (a) through (c).[5] Similarly, pursuant to regulations promulgated by DOL, the term "professional employee" includes "any employee with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment by which the employee is employed." 29 C.F.R. § 541.303(a). Under the structure of DOL's regulations, which were revised in 2004, the teacher exemption is also separate from the learned professional exemption. Because the plaintiff-instructors are "teachers" whose primary duty is imparting knowledge of all aspects of firearms, and because FLETC is an educational

[5] On May 26, 2006, OPM noticed a proposed rule which would make substantive changes to the "professional exemption," including the definition of "teacher." 71 Fed. Reg. 30301 (May 26, 2006). However, those changes have not been implemented and are accordingly not binding upon this matter. Blackfeet Nat'l Bank v. Rubin, 890 F.Supp. 48, 52-54 (D.D.C. 1995) ("[P]roposed regulations do not purport to regulate current conduct by the parties . . . [and] do not have the status of law or require anyone to comply with them in any matter."), aff'd, 67 F.3d 972 (D.C. Cir.1995).

establishment, plaintiffs are exempt from FLSA and are not entitled to any additional overtime pay.

A. FLETC Instructors Are Teachers Engaged In The Imparting Of Knowledge

As we demonstrate below, the FAD instructors are engaged full-time in the imparting of knowledge to students. The instructors impart theoretical and practical firearms skills and knowledge, in both basic entry-level courses and advanced courses. Instructors also teach advanced courses to various Federal, state, local, tribal, and international law enforcement entities upon an "export" basis. Instructors are responsible for developing, revising, and reviewing lesson plans and provide input upon course curriculum, training aids, and other course-related subject matter. Like all teachers, instructors must use their own individual teaching style and communication skills to impart their knowledge and experience upon their students and use their professional judgment and teaching skills to assess student progress and ability. Because teaching and preparation for teaching constitutes the instructor's primary duty, the firearms instructors are teachers.

1. The Instructors' Job Duties Consist Of Teaching Firearms Classes And Work Ancillary To Teaching

The Court must determine an employee's FLSA exempt or nonexempt status based upon the "duties actually performed by the employee." 5 C.F.R. § 551.202(i); Berg, 982 F.2d at 502, 503. The instructors' primary duty consists of imparting comprehensive and advanced firearms skills, techniques, and knowledge by conducting basic and advanced firearms courses for new and experienced law enforcement officers. PFUF ¶ 37; 38. The instructors teach basic and advanced firearms courses to students so that the students can achieve course objectives. PFUF ¶ 37; 38. Instructors generally teach courses four to six hours a day. PFUF ¶ 41. Firearms

courses generally include some classroom instruction as well as hands-on firing upon one of the FAD's indoor or outdoor firing ranges. PFUF ¶ 42.

FLETC offers approximately 120 different firearms courses. PFUF ¶ 10. However, the bulk of the FAD courses are part of 14 basic programs, such as the Criminal Investigator Training Program ("CITP"), Uniformed Police Training Program ("UPTP"), and Land Management Training Program ("LMTP"). These courses last approximately twelve weeks and 54-108 hours of instructional timef. DA18. In these comprehensive introductory classes, students who are new to law enforcement learn basic firearms safety, gun nomenclature, safe gun loading and unloading, marksmanship techniques, the methods and practice of target firing, moving targets, using cover, shooting in reduced light situations, and occasions for justifiable use of deadly force. PFUF ¶ 43. Such classes also include instruction in judgment pistol shooting, which is the ability to use judgment in determining whether deadly force is appropriate. DA144.[6]

Some instruction takes place in a traditional classroom setting. Other instruction takes the form of practical exercise upon one of FLETC's eighteen firing ranges, in a "live fire shoot house" or in other simulated scenarios.[7] DA356:6-10. Instructors may also teach courses using non-lethal training ammunition ("NLTA"), including paintball or other marking cartridges in practical exercises. The use of this type of ammunition allows the instructors and students to simulate "real-life" scenarios which allow the students to demonstrate judgment shooting and the proper use of force. DA143. Such NLTA training often uses contract employees as role players,

---

[6] "DA__" refers to pages of the defendant's appendix.

[7] A live fire shoot house is a 1,000 square feet house lined with rubber lamella, complete with mannequins, which allows students to use live ammunition in a simulated scenario.

who are trained by instructors. DA309:7-24 (testimony of Tom Pegula). Instructors may also use other advanced technologies, such as computerized video scenarios to teach judgment shooting.

When students are on the firing range, multiple instructors are assigned to be on the range so that students receive individualized attention and critique, as well as to ensure safety. PFUF ¶ 43. The student-teacher ratio generally varies from 1:4 to 1:6, depending on the course. DA110. When students are on the firing range, one instructor is assigned to be in “the tower.” That instructor can narrate a “course of fire” over public speaker, as well as observe the entire firing range.[8]

Instructors may also teach advanced subject matter, such as Tactical Training and Survival Shooting. DA285:4-8 (plaintiff Carlos Patrick describing reactive shooting as “shooting related to being involved in a gunfight.”) These courses generally require, as a prerequisite, that students complete a basic firearms course and demonstrate basic shooting proficiency. DA170-171. Students in these classes are generally current law enforcement officers who come to FLETC for continuing education. Finally, the FAD offers a number of courses for current and prospective firearms instructors. DA19-21. The basic course for new instructors is the Firearms Instructor Training Program (“FITP”). This two-week course is one of the requirements for FAD instructors prior to being able to coordinate and teach their own courses. PFUF ¶ 26. This program provides a specific curriculum of training for firearms instructors. These course include lessons in instructional techniques, practical exercises, and safety. PFUF ¶ 27. These courses teach new instructors how to teach firearms, either at the

---

[8] A course of fire is a set of prescribed positions, number of shots, distance, and time for shooting.

instructors' individual agency or as new FAD instructors. Refresher courses are also offered, such as the Firearms Instructor Refresher Training Program, which provide updates information of new methodologies, policies, and procedures. DA19-21. Completion of such refresher courses are often required of Federal employees who may serve as agency instructors or firearms qualifications officers.

For any particular course, instructors may be assigned to be a course coordinator or a line instructor. PFUF ¶ 43. Instructors assignments are made by the FAD Scheduler, who is a Senior Instructor with that responsibility. Course coordinators are responsible for a large part of course administration, such as completing student paperwork, ensuring sufficient weapons and ammunition for shooting exercises, and preparing the ranges prior to a class session. PFUF ¶ 45.

Line instructors assist with one-on-one instruction at the firing line during shooting drills. Line instructors observe student performance on the range to identify and correct problems. PFUF ¶ 44. Instructors "provide counseling based on target analysis." DA107. Line instructors also assist during classroom instruction, as necessary, for example, by observing students cleaning their firearms. All instructors must be aware of, identify, and prevent potential safety violations. DA286:5-16 (plaintiff Carlos Patrick describing pulling a student "off the line" for a safety violation.)

For basic courses, instructors generally grade students based on their shooting accuracy. PFUF ¶ 44. Prior to final assessments at the end of firearms courses, instructors are responsible for identifying and addressing problems students may be having and providing one-on-one instruction on the range. DA108. Students may be referred to Intermediate After Hours Firearms Training Program ("IAHFTP"). The IAHFTP program provides additional time and instruction for students who fail to achieve a minimum qualifying score during Basic

Marksmanship Instruction or Practical Pistol Course. PFUF ¶ 46. In those sessions, the instructors do not follow any set curriculum, but must use their judgment and discretion to determine how best to improve an individual student's marksmanship.

When instructors are not actively teaching courses, their other duties relate to the preparation for courses. PFUF ¶ 47. For example, instructors may be required to set up the classroom, DA304:6-11, inspect firing ranges, account for weapons, review lesson plans and syllabi, or work upon other projects, as needed. Instructors may also be assigned projects whose purpose is to improve curriculum and the FAD programs. DA188; 237. For example, instructors may test new ammunition or research a new piece of safety equipment. Such projects are integral to continuing to maintain quality curriculum and educational experience. See DA251 (plaintiff Lead Instructor Carlos Patrick describing his work evaluating reduced hazard ammunition as "an essential part of the FAD quality of training").

Senior (GS-13) instructors are assigned a topical area of responsibility. PFUF ¶ 40. They are responsible for coordinating research, overseeing lesson plan development and revision, and any other projects that may be needed. DA188. For example, plaintiff Larry Tully is responsible for the Interactive Use of NLTA program. DA63; DA367:1-9. Plaintiff Jonathan Astor is responsible for instructor training and career development. DA63. All of the topical areas of responsibility relate either to a particular course or educational program, or a component of FAD training program, such as ammunition. DA368:5-12 (testimony of Walter Koran describing plaintiff Catherine Lee's duties.)

2. Courses And Course Development

As explained above, instructors teach a wide variety of firearms courses. Each course has a syllabus and lesson plan, which are developed and reviewed by firearms instructors and

approved by supervisors. PFUF ¶ 50; see, e.g., DA168-182 (lesson plan revised by plaintiffs Buchholz, Conway, Evans, and Delashmit). The syllabus outlines the course's objectives and methods of evaluation. DA171. Such courses are developed or revised by instructors, often with the input of partner agencies, who identify particular needs for certain types of classes or subject matter.[9] Instructors may also use research to develop and revise lesson plans. See DA177. The instructors are rated, for performance appraisal purposes, upon their ability to develop and review lesson plans and other curricular materials. PFUF ¶¶ 51;55.

Lesson plans and instructor guides provide instructors with necessary overview of the objectives to be covered, specific courses of fire to conduct, and subject matter to be covered. While many basic fundamentals of firearms, such as safety and accuracy, remain the same, curriculum is continuously changing to address new needs and technology in law enforcement. DA277:5-22; DA351:18-20 (testimony of Branch Chief Walter Koran that "some of the lessons do change quite a bit and some are completely new since 9/11.") Instructors must learn and become proficient in new weapons that become available and are adopted by partner law enforcement agencies as service weapons. DA352:1-10. In addition, new curriculum is being developed. For example, the FAD recently introduced Tactical Threat Engagement training into the CITP training this past fall. Plaintiff Darrell Walker, a Senior Instructor, led the creation of this program, and plaintiff Doug Morgan, another Senior Instructor also assisted in creation of this program. DA183. Instructors also lead the way in developing new state-of-the-art training

[9] There is likely a disputed issue of fact as to the depth and frequency of the instructors' course development work. However, it is uncontroverted that instructors are rated on course/lesson plan development and this work relates directly to the instructors' teaching responsibilities. Therefore, any disputed fact is not material for purposes of this motion for summary judgment.

technology that furthers students' proficiency. For example, FLETC Instructors also researched and implemented the use of reduced hazard ammunition.

3. Job Requirements and Training

All instructors are required to have significant previous law enforcement experience. PFUF ¶ 20. They are expected to bring their "expertise to analyze targets and make constructive recommendations" to the student shooters. DA105. Instructors are also required to possess teaching experience or experience which demonstrates the ability to train or instruct others as a prerequisite to the job position. PFUF ¶ 22. Before being allowed to teach courses independently, instructors undergo a comprehensive six to twelve month training period once hired by, or permanently detailed to, FLETC. PFUF ¶ 24; 35.

During this comprehensive program, new firearms instructors are assigned a training officer by a Senior Instructor serving as the Professional Development Senior Instructor. PFUF ¶ 28. New instructors take several courses both within the Firearms Division and also general FLETC courses for new instructors. PFUF ¶ 35. These courses, including FITP, are designed to teach new instructors instructional techniques. See DA100-111 (FITP lesson plan on line instruction); DA116-135 (FITP lesson plan on instructional techniques). New instructors observe classes and co-teach classes with an experienced instructor who serves as a training officer. PFUF ¶ 30. As part of the instructor training, new instructors take courses covering instructional techniques specific to firearms, which includes classroom presentation, preparation of lesson plans, and questioning methods. PFUF ¶ 27; DA106; DA116-136. New instructors receive daily critique from their training officers upon their class organization, presentation, style, and procedure. PFUF ¶ 33. After successful completion of three phases of training, and one year of service at FLETC, an instructor will receive certification that he or she may teach

firearms without supervision. PFUF ¶ 36. Instructors are required to maintain certain continuing education requirements, such as CPR, safety, hazardous materials handling, trauma, and annual shooting qualifications. DA81.

Based on the above undisputed facts, the instructors' position consists of teaching and instructing students in firearms skills, safety, and justifiable use of firearms. The FAD instructors are rated, for purposes of performance appraisal, upon their teaching skills and abilities and course/lesson plan development. PFUF ¶ 52; 53. Senior instructors are expected to perform research to continually improve curriculum and teaching methods. PFUF ¶ 54;56. The instructors are expected to lecture, hold the class's attention, answer questions from students, and engage students in class discussion. See DA278:9-17 (plaintiff George Foley describing "we tell them [students], we show them, we hands-on. As many ways as we can present [course material] to them then, hopefully, they will absorb it better"); DA288:1-9 (plaintiff Carlos Patrick explaining how he stimulates classroom discussions.) Accordingly, the instructors meet the first part of the FLSA exemption criteria.

Although the FAD instructors may not be "teachers" in a traditional sense, precedent and the 2004 DOL regulations make clear that FLSA's teacher exemption extends beyond traditional academic teachers. The Lead Instructor and Senior Instructor positions fall into the exemption category as much as "teachers engaged in automobile driving instruction [and] aircraft flight instructors." 29 C.F.R. § 541.303(b). These types of instructors rely upon specialized training and experience, and not necessarily a college degree in education. See, e.g., Gonzales v. New Engl. Tractor Trailer Training Sch., 932 F. Supp 697, 701 (D.Md. 1996) (finding truck driving school instructors who teach students "to become licensed over-the-road drivers" to be exempt teachers). Moreover, although FLETC instructors are not required to have state teaching

licenses, the lack of a license does not preclude a finding that the instructors are "teachers." See 29 C.F.R. § 541.303(c) (recognizing that "teacher's certificate is not generally necessary for employment in institutions of higher education or other educational establishments.")

Determinations of FLSA-exempt status is based upon the day-to-day duties actually performed by plaintiff. Berg v. United States, 49 Fed. Cl. 459 (2001); Abundis v. United States, 18 Cl. Ct. 657, 659 n.2 (1989); 5 C.F.R. § 551.202(i). Because the instructors cannot credibly deny that their primary duty is providing quality and professional firearms instruction to a variety of basic and advanced students, this Court should find that the instructors qualify as "teachers."

B. FLETC Is An Educational Establishment

The second element the defendant-employer must show is that it is an "educational establishment." FLETC is an educational establishment within the meaning of FLSA. OPM's regulations do not define "educational establishment." Accordingly, it is appropriate to consider DOL's interpretation of the "educational establishment" requirement. See Am. Fed'n of Gov't Employees v. OPM, 821 F.2d 761, 769-71 (D.C. Cir. 1987). DOL has interpreted FLSA's phrase "elementary or secondary school," to include "an institution of higher education or other educational institution." 29 C.F.R. § 541.204(b).

For example, the educational division of a prison was found to meet FLSA's definition of school. Wilks v. District of Columbia, et al., 712 F. Supp. 1383, 1386 (D.D.C. 1989) ("the Office of Educational Services. . . is essentially a school.") A non-profit corporation which offered management courses was found to be an educational establishment. Muller v. American Mgmt. Ass'n Int'l, 368 F. Supp.2d 1166 (D. Kan. 2004) (decided under previous version of DOL regulation). More closely related to the present issue, DOL has found that instructors of air

traffic controllers, who taught at a satellite extension location of the Federal Aviation Academy, were employed in an educational establishment. DOL Op. Letter, 2004 WL 2146934 (June 2, 2004).[10]

FLETC's primary mission is to provide specific law enforcement training to new and experienced law enforcement officers in a range of topics required for their professional development. PFUF ¶¶ 1;6. FLETC is the nation's lead entity for training of Federal law enforcement personnel. DA10. In addition to firearms courses, FLETC, through its basic training programs, offer courses in arrest techniques, constitutional and criminal law, terrorism, and officer safety, which are taught by instructors in other FLETC divisions. PFUF ¶ 6. Students come to FLETC to complete various courses based upon curriculum required by their respective Federal agency. PFUF ¶ 4. FLETC publishes a "Catalog of Training Programs," which publicizes to Federal agencies the types of courses available. DA1-24.

In the context of "post-secondary career programs," DOL lists certain factors to consider in determining whether such a program is an educational establishment, including whether the program is licensed by a state agency or accredited by a national program. 29 C.F.R. § 541.204(b). FLETC is unique in that there are only a few other institutions which offer the caliber and depth of courses in this specific subject matter. FLETC is accredited by a national accrediting entity for law enforcement training institutions. DA26-61. In March of 2006, FLETC was awarded accreditation by the Federal Law Enforcement Training Accreditation

---

[10] Although the DOL Fact Sheet is not binding upon this Court, DOL's opinion is entitled to some respect, given that it is policy "made in pursuance of official duty, based upon more specialized experience and broader investigations and information than is likely to come to a judge in a particular case." Skidmore v. Swift & Co., 323 U.S. 134, 139-40 (1944).

Board of Directors ("FLETA"), a Federal oversight body funded by the Office of Management & Budget ("OMB"). PFUF ¶ 5.

Although FLETC does not award degrees or college credit for its courses, successful completion of a firearms training course, as part of a basic training program, is a prerequisite for the 40,000-50,000 annual students to maintain their jobs in their respective Federal law enforcement agency employers. Refresher courses are also often a requirement for firearms instructors or qualification officers in individual law enforcement agencies. DA301:6-16. FLETC conducts graduation for students upon their successful completion of basic training, which enables the students to retain their employment with their respective Federal law enforcement agencies. FLETC's sole mission is to "train those who protect our homeland" – in other words, to educate current and future Federal law enforcement officials. DA10. Accordingly, FLETC is an educational establishment for purposes of FLSA.

## II. Assuming That The United States Is Not Entitled To Summary Judgment Upon All Claims Raised in The Complaint, The United States Is Entitled To Partial Summary Judgment Upon Plaintiffs' Claims For Prejudgment Interest Pursuant To The Back Pay Act

In the event that this Court finds that plaintiffs are entitled to judgment in their favor, plaintiffs are not entitled to prejudgment interest upon any amount recovered. In the complaint, plaintiffs seek interest upon unpaid overtime compensation, pursuant to the Back Pay Act, 5 U.S.C. § 5596. Compl. ¶ 13. Because the United States has not waived sovereign immunity to be sued for interest for FLSA violations, plaintiffs are not entitled to interest under the Back Pay Act. The United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941). Statutory language giving the Government's

consent to be sued must be strictly construed in favor of the sovereign, and the waiver of immunity cannot be expanded "beyond what the language requires." Eastern Transportation Co. v. United States, 272 U.S. 675, 686 (1927).

This rule applies with particular force where a claim is made for interest against the United States. It is a longstanding rule that "interest cannot be recovered unless the award of interest was affirmatively and separately contemplated by Congress." Library of Congress v. Shaw, 478 U.S. 310, 315 (1986) (citation omitted). "Apart from constitutional requirements, in the absence of specific provision by contract or statute, or 'express consent . . . by Congress,' interest does not run on a claim against the United States." Id. at 317 (citation omitted).

It is settled that the FLSA itself does not provide for recovery of interest. Doyle v. United States, 931 F.2d 1546, 1550 (Fed. Cir. 1991); Zumerling v. Marsh, 783 F.2d 1032 (Fed. Cir. 1986). Nor does the Back Pay Act contain the clear and unequivocal waiver of immunity needed to support the award of prejudgment interest upon plaintiffs' recovery of damages under the FLSA. Angelo v. United States, 57 Fed. Cl. 100, 111 (2003) (finding Back Pay Act did not waive sovereign immunity because of FLSA's right to liquidated damages).

The Back Pay Act does not authorize interest awards upon claims brought pursuant to the FLSA; it provides for interest only upon back pay awards made pursuant to the Back Pay Act itself. The Act states that "[a]n amount payable under paragraph (1)(A)(i) of this subsection shall be payable with interest." 5 U.S.C. § 5596(b)(2)(A) (emphasis added).[11] It follows that

[11] Subsection (1)(A)(i) provides in relevant part:

> An employee of an agency who . . . is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal

Congress has only waived the sovereign immunity of the United States as to interest upon awards made pursuant to the Back Pay Act. In the case before the Court, plaintiffs seek damages pursuant to the FLSA's damage provision, 29 U.S.C. § 216(b), and it is pursuant to the FLSA, not the Back Pay Act that the plaintiffs' damage award would be made. Thus, according to the plain language of the Back Pay Act, the Back Pay Act does not apply to the present case because the award of damages in this case would not be made pursuant to 5 U.S.C. § 5596(b)(1)(A)(i). It follows that the Back Pay Act does not provide an explicit and unequivocal waiver of sovereign immunity.

The structure of the FLSA itself confirms that Congress has not waived the Government's sovereign immunity against interest claims for violations of the FLSA. Adams v. United States, 48 Fed. Cl. 602, 609 (2001), aff'd, 350 F.3d 1216 (Fed. Cir. 2004). The FLSA provides for the payment of liquidated damages. See 29 U.S.C. § 216(b). Liquidated damages, like prejudgment interest, compensate employees for the loss of the use of those monies that the have been improperly withheld. Adams, 48 Fed. Cl. at 610 (citing Brooklyn Savings Bank v. O'Neil, 324 U.S. 697 (1945)). Accordingly, courts have held that recovery of both liquidated damages and Back Pay Act interest is impermissible. Id. (citing cases). Congress also created

---

> or reduction of all or part of the pay . . . .
>
> (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect --
>
> (i) an amount equal to all or any part of the pay ... which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period.

5 U.S.C. § 5596(b)(1)(A)(i).

an exception to the payment of liquidated damages for employers whose actions were in good faith and based upon reasonable grounds. See 29 U.S.C. § 260.

In enacting the FLSA, Congress opted to compensate Federal employees who had been improperly denied overtime pay for the loss of the use of wrongly withheld overtime pay through the provision of liquidated damages. Congress chose not to provide these aggrieved employees interest upon these withheld monies. In passing the Back Pay Act, and in amending it in 1987, Congress gave no indication that it planned to alter this decision. Pub. L. 100-202 § 101(m). Consequently, the Back Pay Act does not provide an express waiver of sovereign immunity in the case before the Court.

## CONCLUSION

For the foregoing reasons, the defendant respectfully requests that the Court enter judgment in favor of the United States. Because there is no genuine issue for trial as whether plaintiffs who occupy GS-12 and GS-13 Instructor positions are exempt from the overtime provisions of the FLSA because they are exempt employees in a bona fide professional capacity. Moreover, even if plaintiffs are entitled to recovery under FLSA, they are not entitled to prejudgment interest pursuant to the Back Pay Act.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

MARGARET WRIGHT
Office of Chief Counsel
Federal Law Enforcement Training Center
Building 94, Suite 100
Glynco, GA

S/Tara K. Hogan
TARA K. HOGAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W.,
Attn: Classification Unit, 8th floor
Washington, D. C. 20530
Tele: (202) 616-2228
Fax: (202) 305-7643

May 18, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on May 18, 2007, a copy of the foregoing "Defendant's Motion for Summary Judgment" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

s/ Tara K. Hogan