IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JONATHAN D. ASTOR, et al. | ) | |
| | ) | Case No. 05-248C |
| | ) | (Judge Williams) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(1) of the Rules of the United States Court of Federal Claims (hereinafter "RUSCFC"), plaintiffs respectfully submit the following proposed findings of uncontroverted facts.

**The Federal Law Enforcement Training Center is a Training Center, Not an Educational Establishment**

1. The Federal Law Enforcement Training Center ("FLETC") is a bureau of the Department of Homeland Security. (DA 10).[1] FLETC is a training organization for law enforcement personnel from federal law enforcement agencies. (Id.). Both basic and advanced law enforcement training are provided at FLETC. (Id.).

2. FLETC operates pursuant to a Congressional mandate to provide a consolidated training facility for the benefit of federal law enforcement agencies. (DA 10). FLETC is a training agency that trains the law enforcement officers of the United

[1] DA refers to Defendant's Appendix filed in support of defendant's motion for summary judgment.

States. (Koran Tr. 41; PA 27).[2]

3. The individuals who come to FLETC for training are already employed as law enforcement employees of a federal, state, or local agency. (Koran Tr. 55; PA 32). There is a fee for law enforcement officers to attend training at FLETC. The fee is paid by that officer's employing agency. (DA 12).

4. The Firearms Division (FAD) is a training division within the Office of Special Training at FLETC. The mission of the Firearms Division is to provide basic and refresher training to law enforcement officers in the proficient, justifiable and safe use of firearms in the protection of the homeland. (Koran Tr. 40;PA 26). With the exception of plaintiffs Iris Caballero and Steven Didier, at all relevant times herein,[3] the plaintiffs are or were all firearms instructors assigned to the FAD. (DPFUF ¶¶ 14-19).[4] The plaintiff firearms instructors are the front-line workers of the Agency who perform the day-to-day work to carry out the mission of training the law enforcement officers in the safe and proficient use of firearms. (Koran Tr. 41; PA 27).

---

[2] Walter Koran was produced by defendant pursuant to a deposition notice issued under Rule 30(b)(6) of the RUSCFC to provide testimony on topics (c) (f) and (h) which covered the job duties, responsibilities, and educational requirements of the plaintiffs; the education, training and experience required for persons to be eligible to become a GS-1801 firearms instructor at FLETC; and the organizational structure and mission of FLETC. (Exh. 1;PA 95-98). Thus, Mr. Koran's testimony with respect to these areas binds the defendant. "PA" refers to Plaintiffs' Appendix" filed contemporaneously herewith.

[3] The statute of limitations for a willful violation of the Fair Labor Standards Act ("FLSA") extends three years prior to the date that a plaintiff's consent form was filed in Court. All plaintiffs in this action other than Mr. Didier and Ms. Caballero worked as firearms instructors during this statutory period. The instant motion applies only to the plaintiffs who worked as firearms instructors during this period.

[4] "DPFUF" references defendant's proposed findings of uncontroverted fact.

5. FLETC is not an academic institution. (Koran Tr. 42; PA 84). The law enforcement officers who come to train at FLETC cannot – and do not – obtain a firearms degree from FLETC. (Koran Tr. 43-44; PA 28-29). A law enforcement officer attending training courses at FLETC cannot obtain a high school or college degree by completing the training courses at FLETC. (Koran Tr. 43-44; PA 28-29). Indeed, the law enforcement officers cannot and do not obtain a firearms license based upon completion of training at FLETC. (Patrick Dec. ¶19; Foley ¶17 ; Pegula Dec. ¶16; LaFollette Dec. ¶19; PA 5, 10-11, 22, 17).

6. The plaintiff firearms instructors are not qualified, certified, or licensed to teach in an educational establishment or school system such as an elementary school, high school, college or vocational school. (Patrick Dec. ¶ 18; Pegula Dec. ¶15; Foley Dec. ¶16; LaFollette Dec. ¶18; Koran Tr. 44; PA 5, 22, 10, 17). They are not certified teachers. (Koran Tr. 44; PA 29).

7. The firearms instructors do not have college degrees in education and no such degree is required to become a firearms instructor. (Koran Tr. 44-45; Patrick Dec. ¶ 18; Pegula Dec. ¶15 Foley Dec. ¶16; LaFollette Dec. ¶18; PA 29-30, 5, 22, 10, 17)

8. There are ***no*** educational requirements, whatsoever, to become a firearms instructor at FLETC. (Koran Tr. 46; PA 31). Instead, both law enforcement experience and firearms ability are required to become a firearms instructor at FLETC. (Koran Tr. 46; PA 31). Although experience in instruction is preferred, FLETC would hire an individual as a firearms instructor who has law enforcement experience and knowledge of firearms even if that individual does not have any experience in

instruction. (Koran Tr. 46; PA 31).

9. The Federal Government does not have an accreditation process that would certify the plaintiffs as instructors or teachers. (Koran Tr. 82; PA 41).

**The Firearms Instructors are Not Classified as Teachers**

10. The plaintiffs are not classified by the Federal Government in a teacher, education or instructor classification series. (Patrick Dec. ¶ 18; Pegula Dec. ¶15; Foley Dec. ¶16; LaFollette Dec. ¶18; Brickhouse Tr. 33-34; PA 5, 22, 10, 17, 89-90). Instead, they are classified in the criminal inspection, investigation and compliance series. (Id.).

11. OPM position classification standards dictate the proper series, titles, and grades of positions in the federal government. (Brickhouse Tr. 32; PA 88).[5] Position classifiers use the Factor Evaluation System consisting of 9 factors to classify a position in the appropriate series and title. (Brickhouse Tr. 20-24; PA 20-21). The duties and responsibilities of the position are the "driving force" in terms of classifying the position in the proper occupational series. (Brickhouse Tr. 32; PA 88).

12. Under OPM's Position Classification Standards, the GS-1700 series covers General Education and Training positions. For example, the 1701 series covers "positions that primarily involve professional work in the field of education and training. . . . " (Exh. 2; PA 99-102). The GS-1702 series includes positions that "involve

[5] Dennis Brickhouse was produced by defendant pursuant to a deposition notice issued under Rule 30(b)(6) of the RUSCFC to provide testimony on topics (d) and (e) which covered the procedures and methods used to create the position descriptions for the GS-1801 firearms instructor position and the methods and procedures used to classify the GS-1801 firearms position at FLETC. (Exh. 1; PA 95-98). Thus, Mr. Brickhouse's

non-professional work of a technical, specialized, or support nature in the field of education and training . . . ." (Exh. 2. PA 99-102 ). The GS-1710 series includes positions "that require applying full professional knowledge of the theories, principles, and techniques of education and training to instructional and educational administration work in education programs operated by Federal agencies." (Id. PA 99-102). The GS-1712 series covers positions "concerned with administration, supervision, training, program development, evaluation, or instruction in a program of training when the paramount requirement of the work is a combination of practical knowledge of the methods and techniques of instruction and the practical knowledge of the subject-matter being taught." (Id.; PA 99-102). The GS-1720 series covers professional education positions that involve promoting, coordinating, and improving education policies, programs, standards, activities, and opportunities in accordance with national policies and objectives." (Id.; PA 99-102).

13. None of the plaintiffs are classified in the 1700 series. (Brickhouse Tr. 33-34; PA 89-90). Instead, the plaintiffs are classified in the GS-1801 series. (Id.). This is the general series for the "Investigation Group." Included in this group are occupations established primarily to effect compliance of individuals or organizations with laws, rules, regulations, executive orders or other mandatory guidelines. (Exh. 2; PA 99-102) 14. The defendant's Rule 30(b)(6) witness on the topic of classification of the plaintiffs' positions explained that the plaintiffs are properly classified in the GS-1801 series. (Brickhouse Tr. 34; PA 90).

---

testimony with respect to these areas binds the defendant.

**The Firearms Instructors' Primary Job Duties are to Ensure a Safe Firing Line and to Train Law Enforcement Officers n Skills related to Firearms Usage**

15. The plaintiffs' primary job duty is to carry out the FAD mission of training law enforcement officers to use firearms properly, safely and proficiently. (Koran Tr.45-46; PA 30-31).

16. As firearms instructors, plaintiffs spend at least 70% of their work time on the firing line. (Patrick Dec. ¶5 (spending 80-100% of his time on firing line); Pegula Dec. ¶3; Foley Dec. ¶3; LaFollette Dec. ¶3; PA 2, 20, 8, 13). On the firing line, they serve as "line instructors" or as the "course coordinator" for the law enforcement officers who come through FLETC for basic and advanced firearms training. The plaintiff firearms instructors do not train law enforcement officers in any topic other than firearms. (Patrick Dec. ¶5; Pegula Dec. ¶3; Foley Dec. ¶3; LaFollette Dec. ¶4; PA 2, 20, 8, 14).

17. When they serve as a line instructor, the plaintiffs' have a dual responsibility of safety and training. Specifically, their job is to ensure that the law enforcement officers shooting at the targets are holding and handling the weapons in a safe manner. While ensuring safety, the line instructors train law enforcement officers in basic marksmanship skills. (Patrick Dec. ¶ 5; Pegula Dec. ¶4; Foley Dec. ¶4; LaFollette Dec. ¶5; PA 2, 20, 8, 14 ).

18. Each firearms course, such as the "Basic Shotgun," "Pistol Shooting," or "M-16 Rifle" courses are called "programs." Each program has a specific lesson plan.

(Koran Tr. 96-97; PA 45-46). The firearms instructors do not have to prepare for the programs that they work because basic marksmanship is a skill which has not changed (or changed very little) in their many years of experience with firearms. (Patrick Dec. ¶6; Pegula Dec. ¶4; Foley Dec. ¶7; LaFollette Dec. ¶5; PA 2, 20, 9, 14).

19. A “course of fire” is a set of step-by-step instructions for firing the weapon to test the law enforcement officers’ proficiency on the firing line. (Koran Tr. 68-69; PA 33-34. The firearms programs have a course of fire laid out in detail in the lesson plan. (Patrick Dec. ¶9; Pegula Dec. ¶5; Foley Dec. ¶5; LaFollette Dec. ¶7; PA 3, 20, 8, 14-15). When conducting a course of fire for qualification, firearms instructors must call out the range commands ***verbatim*** from the lesson plans. (Koran Tr. 70; Patrick Dec. ¶9; Pegula Dec. ¶6; Foley Dec. ¶6; LaFollette Dec. ¶7;PA 34A, 3, 21, 8-9, 14-15).

20. When they serve as course coordinators, the plaintiff firearms instructors’ primary responsibility is to oversee a training course. This will include giving one two hour lecture on the basic skills of firearms usage which involves going over the nomenclature of the weapon and going over the fundamentals of firearms usage (i.e., stance, grip, sight alignment, trigger control, sight picture, follow through, and breath control). (Patrick Dec. ¶7; PA 2-3). Course coordinators also setup the range, collect the weapons and ammunition, and keep accurate records of ammunition usage. (Id.). Course coordinators also work the tower. (Patrick Dec. ¶7; PA 2-3). The tower is the control booth located approximately 50 yards from the firing line. From this location, the course coordinator will call out the stages of the course of fire and operate the targets. Patrick Dec. ¶7; LaFollette ¶6; PA 2-3, 14). These range commands are all

set forth in detailed lesson plans that have been in place at FLETC for many years. (Id.). The plaintiffs do not need to prepare for working the tower because, through their experience, they know the courses of fire. (Patrick Dec. ¶8; Pegula Dec. ¶5; Foley Dec. ¶5; LaFollette Dec. ¶6; PA 3, 20, 8, 14).

21. The plaintiffs obtained their knowledge of firearms from their experience in the military and/or from their law enforcement backgrounds. (Patrick Dec. ¶3; Pegula Dec. ¶2; Foley Dec. ¶2; LaFollette Dec. ¶3; Koran Tr. 137; PA 1-2, 19-20, 7-8, 13, 65). The plaintiffs' primary knowledge is their knowledge of firearms and their ability to use these firearms in a law enforcement setting. (Koran Tr. 138- 139; PA 66-67).

22. While most of the plaintiffs are employed by FLETC, some are employed by other law enforcement agencies and are detailed to FLETC as firearms instructors. The FLETC firearms instructors and the firearms instructors who are on detail perform the same duties and must follow the same SOPs and lesson plans. (Koran Tr. 139; PA 67).

**The Firearms Instructors Do not Exercise Independent Judgment or Discretion In Training Law Enforcement Officers How to Aim and Shoot**

23. The plaintiffs conduct firearms training in strict conformance with the written lesson plans, the detailed instructor's guide, and in accordance with the governing standard operating procedures ("SOPs"). (Patrick Dec. ¶10; Pegula Dec. ¶8; Foley Dec. ¶8; LaFollette Dec. ¶8; Koran Tr. 107- 109, 121-123, 130-131; PA 3-4, 21,9, 15). The SOPs govern the plaintiffs' work and include procedures governing punctuality, uniforms, where to shoot from, safety standards on the ranges, how to

conduct firearms demonstrations, how to approach a trainee (from gun side), etc. (Koran Tr. 121-123; PA 58-60). Plaintiffs are not allowed to deviate from lesson plans or SOPs. Failure to follow governing SOPs are grounds for discipline. (Koran Tr. 127 PA 61).

The plaintiffs are not allowed to deviate from the lesson plans or the SOPs. (Patrick Dec. ¶10; Pegula Dec. ¶8; Foley Dec. ¶8; LaFollette Dec. ¶8; PA 3-4, 21, 9, 15).

24. The plaintiffs do not prepare power point presentations or handouts for any of the training programs to which they are assigned to work. (Patrick Dec. ¶11; Pegula Dec. ¶9; Foley Dec. ¶9; LaFollette Dec. ¶9; PA 4, 21, 9, 15). They do not determine program objectives. (Patrick Dec. ¶11; Lafollette Dec. ¶9; PA 4, 9). They do not conduct research for the programs. (Id.). They do not choose the firearms courses to which they are assigned to work. (Patrick Dec. ¶12; Pegula Dec. ¶10; Foley Dec. ¶10; LaFollette Dec. ¶10; PA 4, 21, 9, 15).

25. There are approximately 160 firearms lesson plans in the FAD. (Koran Tr. 84; PA 42). The plaintiffs do not develop lesson plans on their own. (Patrick Dec. ¶15; Pegula Dec. ¶13; Foley Dec. ¶13; LaFollette Dec. ¶13; PA 4, 21, 10-11). In the FAD, the lesson plans are only "updated" once every two years. (Koran Tr. 80-81; PA 39-40). The "update" may consist of nothing more than "changing the cover page and putting a new date on there." (Koran Tr. 80; PA 39). For the most part, the "update" consists of a review of the lesson plan to make changes to grammar, font or format. (Patrick Dec. ¶15; Foley Dec. ¶13; LaFollette Dec. ¶13; PA 4, 9-10, 15-16). Even where the lesson plan update consists of only changes to format, grammar or font, the

lesson plan must be reviewed by the FAD Branch Chief and Division Chief before it is approved. (Koran Tr. 97-99; PA 46-48). The plaintiffs have no authority to approve a lesson plan for usage in a firearms program. (Id.)

26. Plaintiffs spend less than 1% - 3% of their work time updating lesson plans. (Patrick Dec. ¶15; Pegula Dec. ¶13; Foley Dec. ¶13; LaFollette Dec. ¶13; PA 4, 20, 9-10, 15-16). Unless there is a new weapon, new technology or a new type of threat, the content of the lesson plans stays the same from year to year because of the nature of the topic: shooting guns in a safe and proficient manner. (Patrick Dec. ¶15; Pegula Dec. ¶13; Foley Dec. ¶13; LaFollette Dec. ¶13; Koran Tr. 85; PA 4, 21-22, 9-10, 15-16, 43). The Division Chief of FAD is the only one with approval authority for a new lesson plan or new curriculum. (Koran Tr. 85-86; PA 43-44).

27. The plaintiffs do not work on course development teams. (Patrick Dec. ¶16; Foley Dec. ¶14; LaFollette Dec. ¶14; PA 4, 10, 16). They do not provide grades or report cards to the law enforcement officers at training. Instead, they simply perform the technical task of counting up bullet holes on a law enforcement officer's target to score the target during a qualification course of fire. (Patrick Dec. ¶17; Pegula Dec. ¶14; Foley Dec. ¶14; LaFollette Dec. ¶14; PA 4-5, 22, 10, 16). They do not develop course material in the field of law enforcement. (LaFollette Dec. ¶14; PA 16).

28. In training law enforcement officers in the skill of safe and proficient firearms operations, the plaintiffs do not develop different approaches or methods of instruction. (LaFollette Dec. ¶15; PA 16). Instead, they are required to stay within the guidelines of the lesson plans, instructor's guides, and the SOPs that govern the

Firearms Division of FLETC. (Patrick Dec. ¶10; Pegula Dec. ¶8; Foley Dec. ¶8; LaFollette Dec. ¶8; Koran Tr. 107-109; PA 3-4, 21, 9, 15, 49-51)

29. A qualification course of fire is used in programs involving pistols, shotguns, rifles and submachine guns. (Koran Tr. 109; PA 51). A qualification course, also known as a graded practical exercise, is used to test the law enforcement officer's ability, competency and accuracy with the weapon. (Koran Tr. 109, 111; PA 51, 53). The plaintiff must conduct a qualification course in strict conformance with the SOP and lesson plans governing qualification courses. (Patrick Dec. ¶9; Pegula Dec. ¶6; Foley Dec. ¶6; LaFollette Dec. ¶7; Koran Tr. 109; PA 3, 21, 8-9. 14-15). The plaintiffs must issue only the standard commands, *verbatim*, as they are set forth in the lesson plan for the particular program. (Koran Tr. 110; PA 52).

30. In grading a qualification course, the plaintiffs add up the points (bullet holes) on the target. (Koran Tr. 112-113; PA 54-55). The plaintiffs have no discretion in how to score the target. Scoring a target is totally objective. (Koran Tr. 113; PA 55). The passing score is determined by FLETC or by the law enforcement officer's employing agency. (Koran Tr. 116; PA 56). The passing score is *not* determined by the plaintiffs. (Id.).

31. The plaintiffs do not determine whether the law enforcement officers who train at FLETC are qualified to be law enforcement officers. (Koran Tr. 118; PA 57). Instead, this determination is made by the law enforcement officer's employing agency. (Id.).

**The Only Exemption Claimed by Defendant's Rule 30(b)(6) Witness is the**

**Administrative Exemption to the FLSA.**

32. Connie Delaney is the Chief of the Human Resources Division at FLETC. (Delaney Tr. 9; PA 68). Ms. Delaney is responsible for ensuring the Agency's compliance with the FLSA. (Delaney Tr. 14;PA 69).

33. Among other topics, Ms. Delaney was designated by the Government as its Rule 30(b)(6) witness on the topic of the Government's consideration and application of the Fair Labor Standards Act ("FLSA") to the plaintiffs' positions. (Delaney Tr. 9; PA 68). Ms. Delaney testified that the GS-1801 firearms instructor position is classified as FLSA exempt under the administrative exemption. (Delaney Tr. 15-16; PA 70-71). Ms. Delaney further testified that the administrative exemption is the ***only*** exemption that could apply to the plaintiffs. (Delaney Tr. 16; PA 71).

34. The plaintiffs have regularly worked overtime (i.e., more than 8 hours in a day or more than 40 hours in a workweek). (Patrick Dec. ¶20; LaFollette Dec. ¶20; Foley Dec. ¶18; Pegula ¶17; PA 5, 17, 11, 22). The plaintiffs were not (and are not) paid overtime pay computed at time and one-half their regular rate of pay for the overtime hours that they work as a firearms instructor. (Id.) There are firearms instructors detailed to FLETC but employed by other agencies, such as Customs and Border Protection, who perform the same job duties as the plaintiffs yet they earn overtime pay while the plaintiffs do not. (LaFollette Dec. ¶20:PA 17).

Respectfully submitted,

Dated: July 27, 2007

/s/Molly A. Elkin
Molly A. Elkin
WOODLEY & McGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005
(202) 833-8855

Counsel of Record

CERTIFICATE OF SERVICE

This is to certify Plaintiff's Response Proposed Findings of Uncontroverted Fact was electronically filed on July 27, 2007. I understand that all parties will receive notice of this filing from the Court's electronic filing system.

/s/ Molly A Elkin
Molly A. Elkin