IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JONATHAN ASTOR, ET. AL., | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims, plaintiffs respectfully submit the following responses to defendant's proposed findings of uncontroverted facts:

1. The Federal Law Enforcement Training Center ("FLETC"), located in Glynco, GA, is a residential law enforcement training facility which is responsible for training approximately 50,000 students annually. DA 10.[1]

**RESPONSE:**

Fact is unsupported by cited evidence. Defendant's Appendix at page 10 does not support this fact. Instead, it states that "[o]ver 40,000" law enforcement officers train annually at the various FLETC sites.[2] DA 10.

2. FLETC formally transferred from the Treasury Department to the Department of Homeland Security on March 1, 2003. DA10.

[1] "DA __" refers to pages of the defendant's appendix.
[2] According to DA 10, the other FLETC locations are in Cheltenham, Maryland and in Artesia, New.Mexico.

**RESPONSE:**

Fact is not supported by cited evidence. Defendant's Appendix at page 10 does not support the statement that FLETC transferred to DHS on March 1, 2003.

3. FLETC conducts basic and specialized law enforcement training for Federal law enforcement personnel for approximately 80 partner Federal agencies. DA 10.

**RESPONSE:**

Agreed.

4. Students are selected by their employing Federal agencies to attend training at the FLETC. DA329. New recruits are usually hired, conditioned upon successful completion of basic training at FLETC.

**RESPONSE:**

The fact in the first sentence is not supported by the cited evidence which refers only to which program an agent will attend when he/she comes to FLETC. The cited deposition testimony does not discuss who selects law enforcement officers to attend training or how they are selected. Moreover, defendant has failed to cite *any* authority for the statement set forth in the second sentence of paragraph 4. Accordingly, plaintiffs disagree with this fact.

5. FLETC is accredited by the Federal Law Enforcement Training Accreditation ("FLETA") Board. DA62; DA25-61; DA335:7-14.

**RESPONSE:**

This statement is not supported by the citations referenced. The document relied on by defendant at DA 62 is inadmissible hearsay. Moreover, it was not produced to

plaintiffs during discovery. Further, to the extent that FLETC is "accredited" by FLETA, it is accredited as a law enforcement training center, not as an educational establishment. To the extent that paragraph 5 implies that FLETA is an independent accreditation entity, plaintiffs dispute this allegation. FLETA is part of FLETC. It is not an outside entity. (Koran Tr. 35, DA 336; PA 25). Thus, the Board is "accrediting" its own training facility.

6. FLETC offers courses in all aspects of law enforcement, including physical arrest techniques, constitutional and criminal law, terrorism, interrogation techniques, officer safety, and firearms. DA3-6.

**RESPONSE:**

Agreed. However, plaintiffs' training responsibilities and duties are limited to firearms only. (Patrick Dec. ¶5; Pegula Dec. ¶3; Foley Dec. ¶3; LaFollette Dec. ¶4; PA 2, 8,14, 20).[3]

7. All FLETC students in basic entry-level programs take a firearms course, taught by instructors in the Firearms Division ("FAD"). DA 18.

**RESPONSE:**

Agreed to the extent that "students" refers to the law enforcement officers who come to train at FLETC.

8. The FAD is responsible for providing quality training and instruction in the safe, proficient and justifiable use of firearms to all basic and advanced law enforcement personnel. DA18.

**RESPONSE:**

---

[3] "PA" refers to Plaintiff's Appendix which is filed in support of plaintiffs' cross-motion.

Agreed except plaintiffs are unsure what is meant by "all basic and advanced law enforcement personnel."

9. The FAD is comprised of approximately 125 instructors, who are either employed directly by FLETC or are detailed as an instructor to FLETC from individual Federal law enforcement agencies. DA63.

**RESPONSE:**

The statement is not supported by the cited evidence. Moreover, plaintiffs were never provided a copy of DA 63 in discovery even though it is responsive to plaintiffs' requests. With this objection noted, plaintiffs agree that the instructors are employed by FLETC or are detailed to FLETC from another law enforcement agency and that the instructors have the same job duties and responsibilities regardless of whether they are detailed or work directly for FLETC. (Koran Tr. 139; PA 65).

10. The FAD offers approximately 120 different firearms courses. DA18.

**RESPONSE:**

This fact is not supported by the cited evidence. DA 18 does not provide authority for this statement.

11. The FAD teaches courses on its main Glynco, GA campus. Other courses are offered at FLETC's Cheltenham, MD, Artesia, NM, and Charleston, SC campuses. DA2; DA332:8-17.

**RESPONSE:**

Plaintiffs object to the use of the word "campus." That word does not appear in the citations relied on by defendant and is inappropriately being used by defendant here to imply that FLETC is a school system or educational establishment within the meaning

of the regulations. (DA332 refers to FLETC as a *facility* not a campus.) Similarly, the term “teaches” constitutes a legal conclusion, therefore the statement cannot be asserted as a fact. 5 CFR §551.207 (“A professional employee is an employee who meets all of the following criteria, or any *teacher* who is engaged in the imparting of knowledge or in the administration of an academic program in a school system or educational establishment.”). Otherwise, plaintiffs agree that these are the locations where FAD offers firearms training courses.

12. FAD instructors may also occasionally teach “export” courses, taught in other locations for the benefit of Federal, state, and local law enforcement agencies. DA334:5-7.

**RESPONSE:**

Defendant offers no evidence that any of the plaintiffs “teach” export classes. Moreover, the term “teach” constitutes a legal conclusion and cannot be asserted as a fact. 5 CFR §551.207 (“A professional employee is an employee who meets all of the following criteria, or any *teacher* who is engaged in the imparting of knowledge or in the administration of an academic program in a school system or educational establishment.”). In addition, not all plaintiffs have taught export classes during the period of time covered by this lawsuit. See e.g., Foley Dec ¶11; Pegula Dec ¶11(has not taught any export classes in five years); PA 9, 21).

13. Plaintiffs are instructors who teach at FLETC, either as direct employees or detailed employees from another Federal agency. Compl. ¶ I.

**RESPONSE:**

Plaintiffs object to the extent that the word “teach” means anything other than

they are involved in training. The term "teach" constitutes a legal conclusion, therefore the statement cannot be asserted as a fact. 5 CFR §551.207 ("A professional employee is an employee who meets all of the following criteria, or any *teacher* who is engaged in the imparting of knowledge or in the administration of an academic program in a school system or educational establishment."). Under their official position descriptions, plaintiffs are called "Law Enforcement Specialists" with the term "Instructor" listed in a parenthetical. Plaintiffs agree that they are firearms instructors at FLETC either as direct employees or detailed employees from different federal law enforcement agencies.

14. Plaintiffs Robert Alotta, Ronald Hudgins and Kenneth Longley are employed by the Bureau of Customs and Border Protection and are detailed to FLETC. Kenneth Longley has retired.

**RESPONSE:**

Defendant offers no evidence to support this fact. Accordingly, it violates RUSCFC 56(h)(1).

15. Plaintiff Roger Holt was employed by the Immigration and Customs Enforcement and is detailed to FLETC, prior to his retirement.

**RESPONSE:**

Defendant offers no evidence to support this fact. Accordingly, it violates RUSCFC 56(h)(1).

16. Plaintiff Steven Didier is a GS-13 Senior Instructor in the Enforcement Operations Division.

**RESPONSE:**

Defendant offers no evidence to support this fact. Accordingly, it violates RUSCFC 56(h)(1).

17. Plaintiff Archie Pheasant was a GS-12 Lead Instructor prior to his retirement in 2004.

**RESPONSE:**

Defendant offers no evidence to support this fact. Accordingly, it violates RUSCFC 56(h)(1).

18. Plaintiff Iris Caballero has never been an instructor for the Firearms Division or FLETC.

**RESPONSE:**

Defendant offers no evidence to support this fact. Accordingly, it violates RUSCFC 56(h)(1).

19. With the exception of the plaintiffs identified in paragraphs 14-18, all other plaintiffs hold GS-12-1801 (Lead Instructor) or GS-13-1801 (Senior Instructor) positions in the Firearms Division.

**RESPONSE:**

Defendant offers no evidence to support this fact. Accordingly, it violates RUSCFC 56(h)(1). All of the plaintiffs, with the exception of Steven Didier and Iris Caballero have been employed as GS-1801 Law Enforcement Specialists at the Grade 12 and 13 levels in FAD at FLETC during some or all of the recovery period covered by this case. (Plaintiffs' complaint ¶1 and amended complaints ¶1; DA 65).

20. All instructors are required to have a background and significant experience in law enforcement at either the Federal, state, or local levels. DA 66; 73.

**RESPONSE:**

Agreed as to plaintiffs.

21. All instructors are required to possess significant knowledge of all aspects of firearms. DA66; 73; DA370:9-b2.

**RESPONSE:**

Agreed as to plaintiffs.

22. All instructors must possess teaching experience or experience which shows the ability to teach or instruct. DA67;73; DA340:4-24.

**RESPONSE:**

Plaintiffs disagree with this statement. Defendant's Rule 30(b)(6) witness on the topic of "[t]he education, training, and experience required for persons to be eligible to become a Law Enforcement Specialist (Instructor) in the GS-1801 position at FLETC" testified that FLETC ***would*** hire an individual as a firearms instructor who has significant law enforcement experience and knowledge of firearms even if that individual does not have any experience in instruction. (Koran Tr. 46; PA 31). Because defendant designated Mr. Koran as its Rule 30(b)(6) witness on this topic, his testimony is binding on defendant.

23. Instructors are required to maintain continuing education requirements, such as CPR, safety, trauma, hazardous materials handling, and shooting qualifications. DA85.

**RESPONSE:**

Agreed. However, these "examples" constitute the sum total of the plaintiffs' continuing education requirement.

24. A new Firearms Instructor is required to complete the Employee Career Development Training Program. DA82-85.

**RESPONSE:**

Agreed.

*25.* During the first phase of the training program, a new instructor monitors other classes. DA83.

**RESPONSE:**

Agreed.

26. A new instructor must also complete the Firearms Instructor Training Program ("FITP") course. DA83; DA342 :3-10.

**RESPONSE:**

Agreed.

27. The objective of FITP is to provide new firearms instructors with a familiarization of a variety of light firearms, to include their care and maintenance, introduce the new instructors to teaching techniques, and identifying and resolving shooting problems/errors. DA2O.

**RESPONSE:**

This fact is not supported by the cited evidence. DA 20 does not provide authority for this statement. Accordingly, the fact violates RUSCFC 56(h)(1) and should not be considered by the Court. DA 20 lists the topics included in FITP. The topics listed in paragraph 27 are not listed at DA 20.

28. Once the new instructor has completed FITP, he or she may be assigned to work as a line instructor along side an assigned training officer. DA83.

**RESPONSE:**

Agreed.

29. A new instructor remains in phase I until the training officer determines the new officer has sufficient knowledge to move on to phase II. DA83.

**RESPONSE:**

This fact is not supported by the cited evidence. DA 83 does not provide authority for this statement. Accordingly, the fact violates RUSCFC 56(h)(1) and should not be considered by the Court.

30. During phase II of the training program, the new instructor co-coordinates a basic class, by teaching classes under the direction of an assigned training officer. DA83; DA345:1-7.

**RESPONSE:**

Plaintiffs agree that the new instructor co-coordinates a basic class but plaintiffs object to the term “teaching” on the ground that the term “teach” constitutes a legal conclusion, therefore the statement cannot be asserted as a fact. 5 CFR §551.207. Otherwise, plaintiffs agree that the new instructor will train shooters under the direction of an assigned training officer during Phase II of the training program.

31. The new instructor remains in phase II of the training program until the training officer advises the Professional Development Senior Instructor that the new instructor has made sufficient progress. DA83.

**RESPONSE:**

Agreed.

32. During phase III of the training program, the new instructor teaches an

entire basic course under the observation of a training officer. DA84.

**RESPONSE:**

Plaintiffs agree that during phase III of the training program, the new instructor will provide training for a basic course under the observation of a training officer. However, plaintiffs object to the term “teach” on the ground that the term “teach” constitutes a legal conclusion, therefore the statement cannot be asserted as a fact. 5 CFR §551.207.

33. Training officers are required to provide daily feedback and critique to new instructors. DA81.

**RESPONSE:**

Agreed.

34. Training officers recommend to management whether the new instructor is ready to instruct classes on his or her own. DA85.

**RESPONSE:**

Plaintiffs object to the extent that “management” is vague. Pursuant to DA84, the Training Officer will advise the Branch Chief “through the Professional Development Senior” of whether the new instructor is ready to train shooters on his/her own.

35. In addition to FITP, new instructors must also complete the following courses: a one week Reactive Shooting or Survival Shooting Training Program, a two-week Law Enforcement Training Program, a three-day Basic Evaluator Training Program, a three-day Law Enforcement Instructor Training Non-Lethal Training Ammunition Program, as well as trauma training, Cardiopulmonary Resuscitation Program, Hazardous Material Handling, and weapons proficiency. DA88; DA344:6-9;

DA345:22-24.[4]

**RESPONSE:**

Agreed.

36. After the new instructor has completed all mandatory training and worked in FAD for one year, the instructor will receive an Instructor Certificate. DA85.

**RESPONSE:**

Defendant does not offer support for this statement. Instead, DA 85 states that "a request for an Instructor Certificate will then be submitted to OTA" following the completion of the mandatory training and the one year service requirement.

37. The major duty of the Firearms Instructor, GS-12 is to provide "high quality training to criminal investigators and law enforcement officers" and "to instill the technical and analytical knowledges, skills and attitudes needed for the highest possible proficiency" in the field of firearms. DA65.

**RESPONSE:**

Plaintiffs object to the extent that "major duty" is vague. Plaintiffs agree that the plaintiff firearms instructors at both the GS-12 and GS-13 grade levels spend the substantial majority of their work time (i.e., 75% or more of their work time) on the firing line working as safety officers and training law enforcement officers in the safe and proficient use of firearms. (Patrick Dec. ¶5 (spending 80-100% of his time on firing line); Pegula Dec. ¶3; Foley Dec. ¶3; LaFollette Dec. ¶3; PA 2, 20, 8, 13).

38. The major duty of the Firearms Instructor, GS-13 is to provide "high quality

[4] Although there is more than one position description for the GS-12 position, the only relevant difference is which agency sub-division the employee is assigned to. (For example, Office of Training Applications.).

training" to law enforcement officers and management of a topical area which may include an advanced training program. DA7I; DA347:4-9.

**RESPONSE:**

Plaintiffs object to the extent that "major duty" is vague. Plaintiffs agree that the plaintiff firearms instructors at both the GS-12 and GS-13 grade levels spend the substantial majority of their work time (i.e., 75% or more of their work time) on the firing line working as safety officers and training law enforcement officers in the safe and proficient use of firearms. (Koran Tr. 136-137; Patrick Dec. ¶5 (spending 80-100% of his time on firing line); Pegula Dec. ¶3; Foley Dec. ¶3; LaFollette Dec. ¶3; PA A64-64, 2, 20, 8, 13).

39. Instructors are expected, as part of their job duties, to provide expertise in the subject matter of firearms. DA65;73;108; DA279: 1-4.

**RESPONSE:**

Plaintiffs object to the extent that the authority cited by defendant does not support the statement of fact. DA 108 appears to be part of a lesson plan and states that the instructor should be able to demonstrate weapons handling and marksmanship techniques, should know how to operate the equipment on the range, know the course of fire, and insure compliance with rules and regulations. It does not state that the plaintiffs are expected to have expertise in the subject matter of firearms. DA 73 does not support the statements in paragraph 39. Moreover, in an FLSA exemption case, the actual duties, rather than the employer's expectations of duties, govern the classification analysis.

40. Instructors generally teach courses at least between four to six hours out

of an eight work day. DA283:13-21.

**RESPONSE:**

The term "teach" constitutes a legal conclusion, therefore the statement cannot be asserted as a fact. 5 CFR §551.207 ("A professional employee is an employee who meets all of the following criteria, or any *teacher* who is engaged in the imparting of knowledge or in the administration of an academic program in a school system or educational establishment."). In addition, plaintiffs object to this paragraph to the extent that it implies that the firearms instructors train law enforcement officers in any topical areas other than firearms usage. (Koran Tr. 139; Patrick Dec. ¶5; Pegula Dec. ¶3; Foley Dec. ¶3; LaFollette Dec. ¶3; PA 65, 4, 20, 8, 13)

41. Class instruction generally takes the form of either lecture in a classroom or practical exercises and drills upon a firing range. DA I71.

**RESPONSE:**

Plaintiffs object to the extent that this statement implies that an equal amount of time is spent by the instructors in lectures and on the range. Plaintiffs spend the overwhelming majority of their time (at lease 70%) on the firing line, on the range. (Patrick Dec. ¶5 (spending 80-100% of his time on firing line); Pegula Dec. ¶3; Foley Dec. ¶3; LaFollette Dec. ¶3; PA 2, 20, 8, 13).

42. Introductory classes generally cover basic firearms safety, gun nomenclature, safe gun loading and unloading, marksmanship techniques, the methods and practice of target firing, moving targets, using cover, shooting in reduced light situations, and occasions for justifiable use of deadly force. DA18.

**RESPONSE:**

Agreed.

43. Successful completion of a firearms training course, as part of a basic training program, is generally a prerequisite for students to maintain their jobs in their respective Federal law enforcement agency employers. DA10

**RESPONSE:**

Defendant offers no support for this statement. DA 10 does not provide authority for this statement. Moreover, plaintiffs disagree with this fact to the extent that it implies that the plaintiffs have any control over whether the law enforcement officers maintain their jobs at their assigned agencies. To the contrary, the defendant's Rule 30(b)(6) witness on the topic related to the plaintiffs' job duties and responsibilities testified that FLETC does ***not*** determine whether any of the "students" are qualified to be law enforcement officers. Instead, this determination is left to the Agency. (Koran Tr. 118; PA 57). Because the Government designated Mr. Koran as its Rule 30(b)(6) witness on this topic, his testimony binds the government. *Hyde v. Stanley Tools*, 107 F. Supp. 2d 992, 992-993 (E.D. La. 2000) (striking testimony that contradicted Rule 30(b)(6) deposition testimony).

44. Students in basic or introductory courses are graded upon their shooting accuracy. DA350:3-7.

**RESPONSE:**

Plaintiffs disagree with this statement to the extent that the words "students" or "graded" imply that the plaintiffs are teachers within the meaning of the regulations. The assessment of shooting accuracy is wholly objective and consists of the plaintiffs simply scoring the law enforcement officer's target by adding the point value of the bullet holes

in each target ring. (Koran Tr. 108-109; Patrick Dec. ¶17; Pegula Dec. ¶14; Foley Dec. ¶14; LaFollette Dec. ¶14;PA 50-51, 4, 22, 10, 16).

45. For any particular scheduled class session, both a class coordinator and multiple line instructors are assigned. DA93.

**RESPONSE:**

Agreed.

46. Line instructors observe student performance upon the firing range to identify and correct marksmanship problems as well as to identify and prevent safety violations. DA93;96.

**RESPONSE:**

Agreed.

47. A course coordinator is responsible for course administration, such as completing student paperwork, ensuring sufficient weapons and ammunition for shooting exercises, completing end-of-course reviews and reports, and preparing the ranges prior to a class session. DA353:21-23; DA372: 1-8.

**RESPONSE:**

Plaintiffs disagree with this statement. When plaintiffs serve as course coordinators, their primary responsibility is to sit in a booth, also known as a "tower" 50 yards from the firing line and recite the range commands for the law enforcement officers on the firing line. (LaFollete Dec. ¶6; Foley Dep. Tr 17; PA 14, 93). These range commands are all set forth in detailed lesson plans that have been in place at FLETC for many years. There is no instruction being performed from the tower. (Foley Tr. 17.) Instead, the plaintiff firearms instructor simply calls out the course of fire

commands. For example, they will tell the shooters to shoot two rounds in three seconds. (Id.) Although they do not need to prepare for their work in the tower because they all know the course of fire commands (and if they do not know them, the commands are written out on the tower's computer), they have to physically and manually prepare the range for the shooters. (Patrick Dec ¶¶7-8.; Exh 3; PA 2-3, 103-107). In this regard, "ensuring sufficient weapons and ammunition for shooting exercises," as well as "preparing the ranges prior to class session" are activities performed by the plaintiff instructors while off-the-clock and without compensation when they are assigned as a course coordinator for a 7:30 a.m. course. (Koran Tr. 161; Foley Tr. 28; Exh. 3 ; PA 66, 94, 103-107). On these occasions, prior to their paid time, the plaintiffs are required to collect the guns and ammunition, count the ammo, transport the guns and ammo to the ranges and set up the ranges prior to their paid start time. (Id.). Setting up the range includes, among other things, ensuring the target system, lighting, P.A. system, video equipment are all functioning properly. (Exh. 3; PA 103-107). It includes inspecting the range to ensure all points are equipped with safe functional barricades for 15 and 25-yard line stages of fire. (Id.).

48. The Intermediate After Hours Firearms Training Program ("IAHFTP") program provides additional instruction for students who fail to achieve a minimum qualifying score during Basic Marksmanship Instruction or Practical Pistol Course. In those sessions, the instructors must use their judgment and discretion to determine how best to improve an individual student's marksmanship.

**RESPONSE:**

Defendant offers no evidence, whatsoever, to support this fact. Accordingly, it

violates RUSCFC 56(h)(1) and should not be considered by the Court.

Moreover, the instructors use their skill and experience, rather than judgment and discretion, when assigned to work in the IAHFTP.

49. When instructors are not teaching, they are responsible for preparing for classes, performing research or projects related to curriculum, creating handouts or other materials, and other tasks related to their core duty of instruction. DA368:14-20.

**RESPONSE:**

This statement is not supported by the cited evidence. DA 368 does not provide authority for the statements set forth in paragraph 49. Accordingly, the statement violates RUSCFC 56(h)(1) and should not be considered by the Court.

50. Each course has a syllabus and lesson plans, which are developed and reviewed by firearms instructors and approved by supervisors. DA98; DA347:17-DA348:4.

**RESPONSE:**

Plaintiffs disagree with this fact. While each course has a syllabus and lesson plans, these remain the same from year to year. (Koran Tr. 77-78 ; Patrick Dec. ¶15; Pegula Dec. ¶13; Foley Dec. ¶13; LaFollette Dec. ¶13; PA 37-38, 4, 21-22, 15). Defendant has failed to offer any evidence that the plaintiffs in this case have ever developed a lesson plan. To the contrary, the four plaintiffs whose depositions were taken by defendant have not developed *any* lesson plans in the last five years. (Patrick Dec. ¶15; Pegula Dec. ¶13; Foley Dec. ¶13; LaFollette Dec. ¶13; PA 4, 21-22, 9-10, 15-16).

51. Lead Instructors (GS-12) are rated annually upon the following six

elements:(1) instruction; (2) course development; (3) customer service and interpersonal skills; (4) internal controls and security; *(5)* administer/coordinate class curriculum; and (6) project/task assignment. DA234-242.

**RESPONSE:**

Plaintiffs agree that these are the categories listed in a GS-12 performance work plan. However, they do not represent plaintiffs' primary job duty. Plaintiffs spend 70% or more of their time serving as safety officers and line instructors on the firing line. (Patrick Dec. ¶5 (spending 80-100% of his time on firing line); Pegula Dec. ¶3; Foley Dec. ¶3; LaFollette Dec. ¶3; PA 2, 20, 8, 13). Defendant has not offered any evidence showing what portion, if any, of plaintiffs' work time is spent on the items listed in (2) – (6) above. Defendant has not offered any evidence showing what portion, if any, of plaintiffs' work time is spent on the items listed in (2) – (6) above.

Indeed, defendant has not shown that plaintiffs perform these activities at all.

52. A GS-12 Lead Instructor meets the performance element of "instruction" when he or she is able to instruct proficiently any of the course assigned by the supervisor and instructs courses and conducts laboratory and practical exercises in a manner that the students should achieve the course objectives. DA236.

**RESPONSE:**

Plaintiffs disagree with this fact because DA 236 notes an important limitation on the plaintiffs' ability to instruct firearms courses. DA 236 defines the "instruction" performance element as when the instructor "is able to instruct proficiently any of the courses assigned by the supervisor *using the currently approved lesson plan for the course."* DA 236). The words in italics do not appear in defendant's 52. It is beyond

dispute that the plaintiffs are required to follow only approved lesson plans when conducting firearms training. (Patrick Dec. ¶10; Pegula Dec. ¶8; Foley Dec. ¶8; LaFollette Dec. ¶8; Koran Tr. 75, 107- 109, 121-123, 130-131; PA 3-4, 21, 9, 15, 35, 49-51, 58-60, 62-63).

53. A GS-12 Lead Instructor meet [sic] the performance element of "course development" when he or she is able to consistently ensure that assigned course materials are complete, current, accurate and in compliance with FLETC policies, updates lesson plans and texts at least once during the rating period, and consistently completes assigned new course development and major course revision within due dates. DA237.

**RESPONSE:**

Plaintiffs disagree with this fact because paragraph 53 is incomplete and, as such, misleading. The performance element recognizes that an entire rating year may pass for a firearms instructor without that instructor ever developing or revising a lesson plan. Specifically, the performance standard states that an "[E]mployee will be rated on course maintenance alone if he/she has not had the opportunity to develop new courses or perform major course revision during the rating period as determined by the supervisor." DA 237. The facts further show that the plaintiffs have ***not*** developed any new lesson plans since at least 2002, nor have they done any major revisions to lesson plans. (Patrick Dec. ¶15; Pegula Dec. ¶13; Foley Dec. ¶13; LaFollette Dec. ¶13; PA 4, 21-22, 9-10, 15-16). Moreover, to the extent that plaintiffs have updated lesson plans by correcting format or grammar, they spend less than 3% of their work time engaged in this activity. ((Patrick Dec. ¶15; Pegula Dec. ¶13; Foley Dec. ¶13; LaFollette Dec. ¶13;

PA 4, 21-22, 9-10, 15-16).

54. Senior (GS-13) instructors are assigned a topical area of responsibility. DA202; DA368:2-3.

**RESPONSE:**

Agreed.

55. A GS-13 Senior Instructor is rated on the following six performance elements:(1) projects/research; (2) topical area responsibilities/course development; (3) instruction; (4) customer service and interpersonal skills; *(5)* internal controls and security; and (6) advice and assistance. DA187-92.

**RESPONSE:**

Plaintiffs agree that these are the categories listed in a GS-13 performance work plan. However, they do not represent plaintiffs' primary job duty. Plaintiffs occupying a GS-13 position spend 70% or more of their time serving as safety officers and line instructors on the firing line. (Patrick Dec. ¶ 5; Pegula Dec. ¶4; Foley Dec. ¶4; LaFollette Dec. ¶5; PA 2, 20, 8, 14). Defendant has not offered any evidence showing what portion, if any, of plaintiffs' work time is spent on the items listed in (1) – (6) above.

56. A GS-13 Senior Instructor meets the performance element of "topical area responsibilities/course development" if he or she is able to review courses assigned as topical area for currency and quality at least quarterly, monitor Lesson Plan Development Teams within the topical area, and provide assistance to staff in their area of expertise. DA202.

**RESPONSE:**

This fact is not supported by the cited evidence. DA 202 is a portion of a

document that has not been authenticated and, as such, is inadmissible. Moreover, defendant has not offered any facts or evidence that establish how much work time, if any, the GS-13 plaintiffs spend engaged in the activities described in paragraph 56.

57. A GS-13 Senior Instructor meets the performance element of "instruction-administration and coordination" if he or she is able to be fully aware of each course within the topical area, to teach or coordinate courses, and to serve as training officers for new instructors, if needed. DA203.

**RESPONSE:**

This fact is not supported by the cited evidence. DA 202 is a portion of a document that has not been authenticated and, as such, is inadmissible. Moreover, defendant has not offered any facts or evidence that establish how much work time, if any, the GS-13 plaintiffs spend engaged in the activities described in paragraph 57. Moreover, contrary to defendant's asserted fact, DA 203 states that the employee meets the requirements for this element when the employee "has no serious deviations, infractions, or discrepancies in any job related element…." It goes on to list the job factors as: (1) professional conduct; (b) adhering to the training program and schedule; (c) implementing and enforcing rules of safety; (d) posting and maintaining accuracy in reports and records; (e) control and accountability for ammunition; (f) injury reporting; (g) range and equipment check prior to training; (h) assuring established instructor/student ratios during live firing; and (i) accountability for equipment and supplies. DA 203.

58. The GS-12 and GS-13 instructor positions are classified as FLSA exempt. DA64; 70.

Plaintiffs agree with this fact but assert that the plaintiffs have been misclassified. Moreover, based on the facts set forth in 33-36 of plaintiffs' proposed findings of uncontroverted facts, the defendant has done ***nothing*** to ensure that the plaintiffs are correctly classified as FLSA exempt.

Respectfully submitted,

Molly A. Elkin
Woodley & McGillivary
1125 15th Street, N.W.
Suite 400
Washington, DC 20016

CERTIFICATE OF SERVICE

This is to certify Plaintiff's Response Defendant's Proposed Findings of Uncontroverted Fact was electronically filed on July 27, 2007. I understand that all parties will receive notice of this filing from the Court's electronic filing system.

/s/ Molly A Elkin
Molly A. Elkin