`IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JONATHAN D. ASTOR, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 05-248C |
| | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFFS'
PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims, the defendant, the United States, respectfully submits its responses to plaintiffs' proposed findings of uncontroverted fact, dated July 27, 2007, as follows:

1. The Federal Law Enforcement Training Center ("FLETC") is a bureau of the Department of Homeland Security. DA10. FLETC is a training organization for law enforcement personnel from Federal law enforcement agencies. Id. Both basic and advanced law enforcement training are provided at FLETC. Id.

**RESPONSE**:

The Government concurs. See DPFUF ¶¶ 1-2.

2. FLETC operates pursuant to a Congressional mandate to provide a consolidated training facility for the benefit of Federal law enforcement agencies. (DA 10). FLETC is a training agency that trains the law enforcement officers of the United States. (Koran Tr. 41; PA 27).

**RESPONSE**:

The Government concurs. See DPFUF ¶ 3.

3. The individuals who come to FLETC for training are already employed as law

enforcement employees of a federal, state, or local agency. (Koran Tr. 55; PA 32). There is a fee for law enforcement officers to attend training at FLETC. The fee is paid by that officer's employing agency. (DA 12).

**RESPONSE**:

The Government concurs with the first sentence to the extent that many FLETC students are provisionally hired by their respective agencies. Full employment of a new Federal law enforcement officer is usually contingent upon successful completion of a basic training program, such as Criminal Investigator Training Program ("CITP").

4. The Firearms Division ("FAD") is a training division within the Office of Special Training at FLETC. The mission of the Firearms Division is to provide basic and refresher training to law enforcement officers in the proficient, justifiable and safe use of firearms in the protection of the homeland. (Koran Tr. 40;PA 26). With the exception of plaintiffs Iris Caballero and Steven Didier, at all relevant times herein, the plaintiffs are or were all firearms instructors assigned to the FAD. **(**DPFUF**,**¶¶ 14-19). The plaintiff firearms instructors are the front-line workers of the Agency who perform the day-to-day work to carry out the mission of training the law enforcement officers in the safe and proficient use of firearms. (Koran Tr. 41; PA 27).

**RESPONSE**:

The Government concurs with the first sentence. The Government generally concurs with the second sentence, but would revise it as shown below to accurately reflect the FAD's official stated mission. The Government agrees with the third sentence, but would also add that plaintiff Debra Roberts has never served as an Instructor. The Government concurs with the

fourth sentence, except to the extent that plaintiffs' use of the term "front-line worker" is used as a legal term or conclusion.

**PROPOSED REVISION**:

The Firearms Division ("FAD") is a training division within the Office of Special Training at FLETC. The mission of the Firearms Division is to provide quality training in the safe handling, proficient application and justifiable use of firearms to all basic and advanced sworn law enforcement personnel. With the exception of plaintiffs Iris Caballero, Steven Didier, and Debra Roberts, at all relevant times herein, the plaintiffs are or were all firearms instructors employed by FLETC and assigned to the FAD. Plaintiffs Holt, Longley, and Hudgins were employed by other agencies and detailed to work in the FAD at FLETC. The plaintiff firearms instructors perform the day-to-day work to carry out the mission of training the law enforcement officers in the safe and proficient use of firearms.

5. FLETC is not an academic institution. (Koran Tr. 42; PA 84). The law enforcement officers who come to train at FLETC cannot - and do not - obtain a firearms degree from FLETC. (Koran Tr. 43-44; PA 28-29). A law enforcement officer attending training courses at FLETC cannot obtain a high school or college degree by completing the training courses at FLETC. (Koran Tr. 43-44; PA 28-29). Indeed, the law enforcement officers cannot and do not obtain a firearms license based upon completion of training at FLETC. (Patrick Dec. ,¶19;. Foley ,¶17 ; Pegula Dec. ,¶16; LaFollette Dec. ,¶19; PA 5, 10-11, 22, 17).

**RESPONSE**:

The Government disagrees with the first sentence in that the term "academic institution" is vague and undefined. FLETC is an educational establishment for purposes of FLSA. The

Government concurs that FLETC does not offer firearms degrees, high school degrees, college degrees, or firearms licenses. The Government objects to the word "indeed" as it is argumentative and not fact.

**PROPOSED REVISION**:

The students who come to FLETC cannot and do not obtain a firearms degree from FLETC. A law enforcement officer attending training courses at FLETC cannot obtain a high school or college degree by completing the training courses at FLETC. The law enforcement officers cannot and do not obtain a firearms license based upon completion of training at FLETC.

6. The plaintiff firearms instructors are not qualified, certified, or licensed to teach in an educational establishment or school system such as an elementary school, high school, college or vocational school. (Patrick Dec. ,¶ 18; Pegula Dec. ,¶15; Foley Dec. ,¶16; LaFollette Dec. ,¶18; Koran Tr. 44; PA 5, 22, 10, 17). They are not certified teachers. (Koran Tr. 44; PA 29).

**RESPONSE**:

The Government does not have any knowledge as to whether individual firearms instructors may be qualified, certified or licensed to teach in an elementary school, high school, college or vocational school, but concurs that there is no employment requirement. The Government proposes a revision, as shown below. The Government disagrees with the second statement because all firearms instructors are qualified to teach courses at FLETC after completing necessary courses and one year of employment as an instructor. <u>See</u> DPFUF ¶ 24; DA79; see, e.g., DA425 (application for award of Senior Instructor certificate).

**PROPOSED REVISION**:

There is no requirement that firearms instructors be qualified, certified, or licensed to teach an elementary school, high school, college or vocational school. Instructors receive a FLETC Instructor Certificate upon successful completion of all phases of new instructor training and one year of service. DA79.

7. The firearms instructors do not have college degrees in education and no such degree is required to become a firearms instructor. (Koran Tr. 44-45; Patrick Dec. ,¶ 18; Pegula Dec. ,¶15 Foley Dec. ,¶16; LaFollette Dec. ,¶18; PA 29-30,5,22,10,17)

**RESPONSE:**

The Government does not have any knowledge as to whether individual firearms instructors may have college degrees in education. The Government concurs with the second sentence that no education degree is required to become a Firearms Instructor at FLETC.

8. There are no educational requirements, whatsoever, to become a firearms instructor at FLETC. (Koran Tr. 46; PA 31). Instead, both law enforcement experience and firearms ability are required to become a firearms instructor at FLETC. (Koran Tr. 46; PA 31). Although experience in instruction is preferred, FLETC would hire an individual as a firearms instructor who has law enforcement experience and knowledge of firearms even if that individual does not have any experience in instruction. (Koran Tr. 46; PA 31).

**RESPONSE**:

The Government disagrees with the first sentence in that a high school degree is required to become a firearms instructor at FLETC. DA571. The Government concurs with the second

sentence except for the use of the word “indeed.” The Government would revise the third sentence as shown below, to accurately reflect other facts presented.

**PROPOSED REVISION**:

A high school degree is the minimum educational requirement to become a firearms instructor at FLETC. DA571. Both law enforcement experience and firearms ability are required to become a firearms instructor at FLETC. DA574. Experience which demonstrates the ability to train and/or instruct is needed to be hired as a firearms instructor, and experience in adult instruction is preferred. PA31; DPFUF ¶ 22; DA67; 73.

9. The Federal Government does not have an accreditation process that would certify the plaintiffs as instructors or teachers. (Koran Tr. 82, PA 41).

**RESPONSE**:

The Government partially concurs with this proposed finding in that, while the Federal Government as whole does not accredit the instructors, FLETC Firearms Instructors are certified to teach after completion of a significant training program. DPFUF ¶ 24; DA77-90.

10. The plaintiffs are not classified by the Federal Government in a teacher, education or instructor classification series. (Patrick Dec. ¶ 18; Pegula Dec. ¶15; Foley Dec. ¶16; LaFollette Dec. ¶18; Brickhouse Tr. 33-34; PA 5,22, 10, 17, 89-90). Instead, they are classified in the criminal inspection, investigation and compliance series. (Id.).

**RESPONSE:**

The Government concurs that all firearms instructors employed directly by FLETC are classified either as GS-1801-12 Law Enforcement Specialist (Instructor) or GS-1801-13 Law

Enforcement Specialist (Instructor). DPFUF ¶ 19. The Government concurs with the second sentence, except to the use of the word "instead."

11. OPM position classification standards dictate the proper series, titles, and grades of positions in the federal government. (Brickhouse Tr. 32; PA 88). Position classifiers use the Factor Evaluation System consisting of 9 factors to classify a position in the appropriate series and title. (Brickhouse Tr. 20-24; PA 20-21). The duties and responsibilities of the position are the "driving force" in terms of classifying the position in the proper occupational series. (Brickhouse Tr. 32; PA 88).

**RESPONSE**:

The Government concurs with the first sentence in that OPM's position classification standards are a guide for human resources personnel to classify job positions into the appropriate series, titles, and grades. The Government concurs with the second and third sentence.

12. Under OPM's Position Classification Standards, the GS-1700 series covers General Education and Training positions. For example, the 1701 series covers "positions that primarily involve professional work in the field of education and training . . . ." (Exh. 2; PA 99-102). The GS-1702 series includes positions that "involve non-professional work of a technical, specialized, or support nature in the field of education and training . . . . " (Exh. 2. PA 99-102). The GS-1710 series includes positions "that require applying full professional knowledge of the theories, principles, and techniques of education and training to instructional and educational administration work in education programs operated by Federal agencies." (Id PA 99-102). The GS-1712 series covers positions "concerned with administration, supervision, training, program development, evaluation, or instruction in a program of training when the paramount

requirement of the work is a combination of practical knowledge of the methods and techniques of instruction and the practical knowledge of the subject-matter being taught." (Id; PA 99-102). The GS-1720 series covers professional education positions that involve promoting, coordinating, and improving education policies, programs, standards, activities, and opportunities in accordance with national policies and objectives." August 16, 2007(Id; PA 99-102).

**RESPONSE:**

The Government concurs that the 1701 series is entitled "General Education and Training Series." Pl. Ex. 1 at PA97. The Government concurs that the quoted language in the second sentence is accurately quoted from Pl. Ex. 1 at PA97. The Government concurs that the quoted language in the third sentence is accurately quoted from Pl. Ex. 2 at PA110. The Government concurs that the quoted language in the fourth sentence is accurately quoted from Pl. Ex. 5 at PA117. The Government concurs that the quoted language in the fifth sentence is accurately quoted from Pl. Ex. 6 at PA124.

13. None of the plaintiffs are classified in the 1700 series. (Brickhouse Tr. 33-34; PA 89-90). Instead, the plaintiffs are classified in the GS-1801 series. (Id.). This is the general series for the "Investigation Group." Included in this group are occupations established primarily to effect compliance of individuals or organizations with laws, rules, regulations, executive orders or other mandatory guidelines. (Exh. 2; PA 99-102)

**RESPONSE:**

The Government concurs. All Firearms Instructors employed directly by FLETC are classified either as GS-1801-12 "Lead Instructor" or GS-1801-13 "Senior Instructor." DFUF¶ 19.

14. The defendant's Rule 30(b)(6) witness on the topic of classification of the plaintiffs' positions explained that the plaintiffs are properly classified in the GS-1801 series. (Brickhouse Tr. 34; PA 90).

**RESPONSE**:

The Government does not dispute that the witness so testified. Whether the plaintiffs are properly classified is a legal conclusion, and therefore, the truth of that statement is improper for a proposed finding of uncontroverted fact pursuant to Rule 56.

15. The plaintiffs' primary job duty is to carry out the FAD mission of training law enforcement officers to use firearms properly, safely and proficiently. (Koran Tr.45-46; PA 30-31).

**RESPONSE:**

The Government concurs, except to the extent that the term "carry out the FAD mission" is used as a legal conclusion or term. See DPFUF ¶¶ 37-38.

**PROPOSED REVISION**:

The firearms instructors' primary job duty is to train law enforcement officers to use firearms properly, safely, and proficiently.

16. As firearms instructors, plaintiffs spend at least 70% of their work time on the firing line. (Patrick Dec. ¶5 (spending 80-100% of his time on firing line); Pegula Dec. ¶3; Foley Dec. ¶3; LaFollette Dec. ¶3; PA 2, 20, 8, 13). On the firing line, they serve as "line instructors" or as the

"course coordinator" for the law enforcement officers who come through FLETC for basic and advanced firearms training. The plaintiff firearms instructors do not train law enforcement officers in any topic other than firearms. (Patrick Dec. ¶5; Pegula Dec. ¶3; Foley Dec. ¶3; LaFollette Dec. ¶4; PA 2, 20, 8, 14).

**RESPONSE**:

The Government concurs with the first sentence to the extent that at least fifty to sixty percent of the instructor's time is spent teaching and proposes a revision below. DPFUF ¶ 40. The Government generally concurs with the second sentence, but notes that instructors do, on occasion, teach courses outside of the FAD. For example, plaintiff Chris LaFollette teaches a protective service operations training course outside the FAD. DA552-53.

**PROPOSED REVISION**:

Firearms instructors spend at least fifty to sixty percent of their work time teaching classes. They serve as "line instructors" or as the "course coordinator" for the law enforcement officers who come to FLETC for basic and advanced firearms training. The plaintiff firearms instructors generally do not train law enforcement officers in any topic other than firearms.

17. When they serve as a line instructor, the plaintiffs[ ] have a dual responsibility of safety and training. Specifically, their job is to ensure that the law enforcement officers shooting at the targets are holding and handling the weapons in a safe manner. While ensuring safety, the line instructors train law enforcement officers in basic marksmanship skills. (Patrick Dec. ¶ 5; Pegula Dec. ¶4; Foley Dec. ¶4; LaFollette Dec. ¶5; PA 2, 20, 8, 14).

**RESPONSE**:

The Government concurs in the first two sentences. The Government concurs in the third sentence to the extent that the instructors are teaching basic courses. For advanced courses, the instructor teach advanced skills and exercises.

18. Each firearms course, such as the "Basic Shotgun," "Pistol Shooting," or "M-16 Rifle" courses are called "programs." Each program has a specific lesson plan. (Koran Tr. 96-97; PA 45-46). The firearms instructors do not have to prepare for the programs that they work because basic marksmanship is a skill which has not changed (or changed very little) in their many years of experience with firearms. (Patrick Dec. ¶6; Pegula Dec. ¶4; Foley Dec ¶7; LaFollette Dec. ¶5; PA 2, 20, 9, 14).

**RESPONSE:**

The Government disagrees with the first sentence to the extent that it is inaccurate. The firearms courses such as Basic Shotgun, Pistol Shooting, or M-16 Rifle are called "courses." Those courses are components of programs such as CITP or Bureau of Land Management Training Program. See, e.g., DA157 ("Judgment Pistol Shooting for Firearms Instructors" is the course title in the Firearms Instructor Training Program). The Government concurs in the second sentence, except that the word "program" should be changed to "course." The Government disagrees with the third sentence to the extent that the instructors claim that being prepared to teach courses is not a requirement of their positions. See DA190; DA236. Moreover, while the Government agrees that basic marksmanship is a skill that has not changed, new laws, procedures, and technologies are continually changing. DA296.

19. A "course of fire" is a set of step-by-step instructions for firing the weapon to test the law enforcement officers' proficiency on the firing line. (Koran Tr. 68-69; PA 33-34.) The firearms

programs have a course of fire laid out in detail in the lesson plan. (Patrick Dec. ¶9; Pegula Dec. ¶5; Foley Dec. ¶5; LaFollette Dec. ¶7; PA 3,20, 8, 14- 15). When conducting a course of fire for qualification, firearms instructors must call out the range commands verbatim from the lesson plans. (Koran Tr. 70; Patrick Dec. ¶9; Pegula Dec. ¶6; Foley Dec. ¶6; LaFollette Dec. ¶7;PA 34A, 3, 21,8-9, 14-15).

**RESPONSE**:

The Government generally concurs with the first sentence that an officer's marksmanship proficiency is tested in a qualification course of fire, but notes that a course of fire can also be used as a practical, ungraded, exercise. PA111. Otherwise, the Government concurs.

20. When they serve as course coordinators, the plaintiff firearms instructors' primary responsibility is to oversee a training course. This will include giving one two hour lecture on the basic skills of firearms usage which involves going over the nomenclature of the weapon and going over the fundamentals of firearms usage (i.e., stance, grip, sight alignment, trigger control, sight picture, follow through, and breath control). (Patrick Dec. ¶7; PA 2-3). Course coordinators also setup the range, collect the weapons and ammunition, and keep accurate records of ammunition usage. (Id.). Course coordinators also work the tower. (Patrick Dec. ¶7; PA 2-3). The tower is the control booth located approximately 50 yards from the firing line. From this location, the course coordinator will call out the stages of the course of fire and operate the targets. Patrick Dec. ¶7; LaFollette ¶6; PA 2-3, 14). These range commands are all set forth in detailed lesson plans that have been in place at FLETC for many years. (Id.). The plaintiffs do not need to prepare for working the tower because, through their experience, they

know the courses of fire. (Patrick Dec. ¶8; Pegula Dec. ¶5; Foley Dec. ¶5; LaFollette Dec. ¶6; PA 3, 20, 8, 14).

**RESPONSE:**

The Government concurs with the first seven sentences, except to the extent that this proposed statement of fact is intended to be an exhaustive list of a course coordinator's duties. Those responsibilities are laid out in detail at DA520-522. The Government disagrees with the eighth sentence to the extent that the plaintiffs contend that being prepared to teach courses is not a duty of their positions.

21. The plaintiffs obtained their knowledge of firearms from their experience in the military and/or from their law enforcement backgrounds. (Patrick Dec. ,¶3; Pegula Dec. ,¶2; Foley Dec. ¶2; LaFollette Dec. ,¶3; Koran Tr. 137; PA 1-2, 19-20, 7-8, 13, 65). The plaintiffs' primary knowledge is their knowledge of firearms and their ability to use these firearms in a law enforcement setting. (Koran Tr. 138-139; PA 66-67).

**RESPONSE:**

The Government concurs.

22. While most of the plaintiffs are employed by FLETC, some are employed by other law enforcement agencies and are detailed to the FLETC as firearms instructors. The FLETC firearms instructors and the firearms instructors who are on detail perform the same duties and must follow the same SOPs and lesson plans. (Koran Tr. 139; PA 67).

**RESPONSE:**

The Government concurs.

23. The plaintiffs conduct firearms training in strict conformance with the written lesson plans, the detailed instructor's guide, and in accordance with the governing standard operating procedures ("SOPs"). (Patrick Dec. ¶10; Pegula Dec. ¶8; Foley Dec. ¶8; LaFollette Dec. ¶8; Koran Tr. 107-109, 121-123, 130-131; PA 3-4, 21,9, 15). The SOPs govern the plaintiffs' work and include procedures governing punctuality, uniforms, where to shoot from, safety standards on the ranges, how to conduct firearms demonstrations, how to approach a trainee (from gun side), etc. (Koran Tr. 121-123; PA 58-60). Plaintiffs are not allowed to deviate from lesson plans for SOPs. Failure to follow governing SOPs are grounds for discipline. (Koran Tr. 127; PA 61).

The plaintiffs are not allowed to deviate from the lesson plans or the SOPs. (Patrick Dec. ¶10; Pegula Dec. ¶8; Foley Dec. ¶8; LaFollette Dec. ¶8; PA 3-4, 21, 9, 15)

**RESPONSE**:

The Government concurs with the first sentence that the instructors must follow standard operating procedures that have been established and that, for obvious safety reasons and for continuity of curriculum, the instructors may not deviate from the subject matter and curriculum outlined in lesson plans or Standard Operating Procedures. DA365. The Government concurs that the Standard Operating Procedures cover a wide range of subject matters, including punctuality, uniforms, and safety standards. The Government concurs that deviation from a lesson plan or Standard Operating Procedure could subject an instructor to discipline, depending on the seriousness of the infraction. DA365.

24. The plaintiffs do not prepare power point presentations or handouts for any of the training programs to which they are assigned to work. (Patrick Dec. ¶11 ; Pegula Dec. ¶9; Foley Dec. ¶9; LaFollette Dec. ¶9; PA 4,21, 9, 15). They do not determine program objectives. (Patrick Dec. ¶11; Lafollette Dec. ¶9; PA 4, 9). They do not conduct research for the programs. (Id.). They do not choose the firearms courses to which they are assigned to work. (Patrick Dec. ¶12; Pegula Dec. ¶10; Foley Dec. ¶10; LaFollette Dec. ¶10; PA 4, 21, 9, 15).

**RESPONSE**:

The Government disagrees that instructors do not prepare any handouts, Power Point presentations, or other training aids. Instructor Cody Blades "developed and updated several powerpoint [sic] presentations" as well as handouts. DA390; 392. Instructor Chris LaFollette testified that he created a video for an advanced program. DA560-61.

The Government disagrees that the instructors do not conduct research. For example, Instructor Cody Blades researched training material from a program named Safe-Today. DA389; DA394. Instructor James McCormack assisted with research on ammunition through testing and evaluation. DA422. Instructor George Foley, contrary to ¶ 9 of his declaration, testified that he conducts research, either self-initiated, or upon request of a supervisor. DA278:19-24. Contrary to ¶ 9 of his declaration, Lead Instructor Carlos Patrick testified that he performed research for the SSTP program. DA291. Contrary to ¶ 9 of his declaration, Instructor Chris LaFollette testified that he researched a video system used to test judgment shooting and made recommendations on whether the FAD should adopt it. DA560-61.

The Government further disagrees that the instructors do not have any say in which types of courses they are assigned to work. While all instructors must be prepared to fill in as needed, instructors do have a say in which types of programs they teach.

25. There are approximately 160 firearms lesson plans in the FAD. (Koran Tr. 84; PA 42). The plaintiffs do not develop lesson plans on their own. (Patrick Dec. ¶15; Pegula Dec. ¶13; Foley Dec. ¶13; LaFollette Dec. ¶13; PA 4, 21, 10-11). In the FAD, the lesson plans are only "updated" once every two years. (Koran Tr. 80-81; PA 39-40). The "update" may consist of nothing more than "changing the cover page and putting a new date on there." (Koran Tr. 80; PA 39). For the most part, the "update" consists of a review of the lesson plan to make changes to grammar, font or format. (Patrick Dec. ¶15; Foley Dec. ¶13; LaFollette Dec. ¶13; PA 4, 9-10, 15-16). Even where the lesson plan update consists of only changes to format, grammar or font, the lesson plan must be reviewed by the FAD Branch Chief and Division Chief before it is approved. (Koran Tr. 97-99; PA 46-48). The plaintiffs have no authority to approve a lesson plan for usage in a firearms program. (Id.)

**RESPONSE**:

The Government concurs with the first sentence. As to the second sentence, the Government agrees that lesson plans are subject to final supervisory review. Lesson plans are now reviewed on an annual basis. DA556. The Government disagrees that lesson plan updates and development are limited to review "format, grammar or font," as opposed to review and development of curriculum content. Instructors are responsible for developing the substance of new lesson plans, which can include developing course costs, determining how much ammunition will be used, etc. Koran Tr. 105-106; DA555(plaintiff LaFollette describing

substance review for lesson plans as "mak[ing] sure the techniques are still current, read[ing] them and make sure that it flows and the instructors can understand how it reads").

For example, plaintiff Steven Buchholz, in his performance appraisal, was commended for his oversight of "development, reviewing, and revision of the Advance Shotgun and Counter Ambush lesson plans." DA399. Plaintiff Kevin Brophy was commended for his "revis[ion of] several courses" and being "instrumental in assisting with the development of many of them." Plaintiff Rodney Burnett authored the lesson plan and SOP for "Range Injury Action Plan." DA413. Plaintiff Bernard Lahr, in a memorandum to his supervisor, noted that he "noted several areas that needed to be addressed [for a particular course] and took it to task to correct and update this lesson plan." His supervisor noted that his work on updating various lesson plans "resulted in the updating of material and the course of fire." George Foley co-authored a new Instructional Techniques for Nonlethal Training Ammunition program. DA317:1-13. Moreover, plaintiffs testified that content review is required of them. DA278:5-7.

26. Plaintiffs spend less than 1% -3% of their work time updating lesson plans. (Patrick Dec. ¶15; Pegula Dec. ¶13; Foley Dec. ¶13; LaFollette Dec. ¶13; PA 4, 20, 9-10, 15-16). Unless there is a new weapon, new technology or a new type of threat, the content of the lesson plans stays the same from year to year because of the nature of the topic: shooting guns in a safe and proficient manner. (Patrick Dec. ¶15; Pegula Dec. ¶13; Foley Dec. ¶13; LaFollette Dec. ¶13; Koran Tr. 85; PA 4,21-22,9-10, 15-16,43). The Division Chief of FAD is the only one with approval authority for a new lesson plan or new curriculum. (Koran Tr. 85-86; PA 43-44).

**RESPONSE**:

The Government does not dispute the first or second sentence. The Government concurs with the third sentence to the extent that the Division Chief of FAD has final approval authority for a new lesson plan or new curriculum that has been developed by instructors. DA97.

27. The plaintiffs do not work on course development teams. (Patrick Dec. ¶16; Foley Dec. ¶14; LaFollette Dec. ¶14; PA 4, 10, 16). They do not provide grades or report cards to the law enforcement officers at training. Instead, they simply perform the technical task of counting up bullet holes on a law enforcement officer's target to score the target during a qualification course of fire. (Patrick Dec. ¶17; Pegula Dec. ¶14; Foley Dec. ¶14; LaFollette Dec. ¶14; PA 4-5,22, 10, 16). They do not develop course material in the field of law enforcement. (LaFollette Dec. ¶14; PA 16).

**<u>RESPONSE</u>:**

The Government agrees that qualification courses are scored on objective scores, PA112, but notes that the instructors must still provide independent instruction and analysis of student skills. <u>See</u> DA280:24:25. (deposition of George Foley agreeing that he independently evaluates students' shooting ability). The Government disagrees with the use of the term "simply." The Government concurs with the second sentence to the extent most courses are scored based on shooting accuracy. However, the Government disagrees to the extent that instructors contend that all grading is done based on shooting score. Instructor Chris LaFollette testified that instructors give pass/fail grades to students in judgment pistol shooting and that some courses the instructors give only critiques. DA564-65.

The Government disagrees that instructors do not develop course material. In order to meet performance standards, instructors must update lesson plans and texts and complete

assigned new course development and major course revision. DA237. For example, plaintiff Greg Bennett developed the lesson plan for "Instructor Techniques for Reactive Shooting." DA443-44.

28. In training law enforcement officers in the skill of safe and proficient firearms operations, the plaintiffs do not develop different approaches or methods of instruction. (LaFollette Dec. ¶15; PA 16). Instead, they are required to stay within the guidelines of the lesson plans, instructor's guides, and the SOPs that govern the Firearms Division of FLETC. (Patrick Dec. ¶10; Pegula Dec. ¶8; Foley Dec. ¶8; LaFollette Dec. ¶8; Koran Tr. 107-109; PA 3-4, 21, 9, 15, 49-51)

**RESPONSE:**

The Government disagrees that with the first sentence. Instructors do develop their own approaches or methods of instruction. For example, plaintiff Cody Blades, in his 2005 performance appraisal, was identified by his supervisor as having "taken the time to research, observe and adopt the instructional skills [he] find[s] to be most effective." DA376. Plaintiff Instructor Carlos Patrick testified that he conducts student discussions in his classes. DA288. Plaintiff Instructor George Foley testified that he must use different ways to present course material. DA278. The Government concurs with the second sentence except to the use of the word "instead."

29. A qualification course of fire is used in programs involving pistols, shotguns, rifles and submachine guns. (Koran Tr. 109; PA 51). A qualification course, also known as a graded practical exercise, is used to test the law enforcement officer's ability, competency and accuracy with the weapon. (Koran Tr. 109, 111; PA 51,53). The plaintiff must conduct a qualification

course in strict conformance with the SOP and lesson plans governing qualification courses. (Patrick Dec. ¶9; Pegula Dec. ¶6; Foley Dec. ¶6; LaFollette Dec. ¶7; Koran Tr. 109; PA 3,21, 8-9. 14-15). The plaintiffs must issue only the standard commands, verbatim, as they are set forth in the lesson plan for the particular program. (Koran Tr. 110; PA 52).

**RESPONSE**:

The Government concurs.

30. In grading a qualification course, the plaintiffs add up the points (bullet holes) on the target. (Koran Tr. 112-113; PA 54-55). The plaintiffs have no discretion in how to score the target. Scoring a target is totally objective. (Koran Tr. 113; PA 55). The passing score is determined by FLETC or by the law enforcement officer's employing agency. (Koran Tr. 116; PA 56). The passing score is not determined by the plaintiffs. (Id).

**RESPONSE**:

The Government concurs.

31. The plaintiffs do not determine whether the law enforcement officers who train at FLETC are qualified to be law enforcement officers. (Koran Tr. 118; PA 57). Instead, this determination is made by the law enforcement officer's employing agency. (Id).

**RESPONSE:**

The Government concurs.

32. Connie Delaney is the Chief of the Human Resources Division at FLETC. (Delaney Tr. 9; PA 68). Ms. Delaney is responsible for ensuring the Agency's compliance with the FLSA. (Delaney Tr. 14; PA 69).

**RESPONSE**:

The Government concurs.

33. Among other topics, Ms. Delaney was designated by the Government as its Rule 30(b)(6) witness on the topic of the Government's consideration and application of the Fair Labor Standards Act ("FLSA") to the plaintiffs' positions. (Delaney Tr. 9; PA 68). Ms. Delaney testified that the GS-1801 firearms instructor position is classified as FLSA exempt under the administrative exemption. (Delaney Tr. 15-16; PA 70-71). Ms. Delaney further testified that the administrative exemption is the only exemption that could apply to the plaintiffs. (Delaney Tr. 16; PA 71).

**RESPONSE**:

The Government concurs with the first and second sentence. The Government agrees with the third sentence to the extent that this is accurate description of Ms. Delaney's testimony; however, the determination as to whether the plaintiffs are FLSA-exempt is a legal conclusion to be drawn by this Court. Therefore, the truth of the content of Ms. Delaney's statement is not one of uncontroverted fact appropriate under Rule 56(h).

34. The plaintiffs have regularly worked overtime (i.e., more than 8 hours in a day or more than 40 hours in a workweek). (Patrick Dec. ¶20; LaFollette Dec. ¶20; Foley Dec. ¶18; Pegula ¶17; PA 5, 17, 11, 22). The plaintiffs were not (and are not) paid overtime pay computed at time and one-half their regular rate of pay for the overtime hours that they work as a firearms instructor. (Id.) There are firearms instructors detailed to FLETC but employed by other agencies, such as Customs and Border Protection, who perform the same job duties as the plaintiffs yet they earn overtime pay while the plaintiffs do not. (LaFollette Dec. ¶20:PA 17).

**RESPONSE**:

The Government concurs that plaintiffs were, at times identified in their timesheets, required to work more than forty hours a week upon occasion and were paid for those hours at a rate pursuant to Title 5. The Government disputes the third sentence to the extent that the declarant has no personal knowledge as to the rate of pay or FLSA classification of the unnamed instructors. In addition, this assertion appears to be inaccurate. For example, the Customs & Border Protection GS-1801-13 Course Developer/Instructor position is classified as FLSA exempt. DA579-587

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/Franklin E. White, Jr.
FRANKLIN E. WHITE, Jr.
Assistant Director

S/Tara K. Hogan
TARA K. HOGAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th fl.
Washington, D.C. 20530
Tele: (202) 616-2228
Fax: (202) 305-7643

August 17, 2007

Attorneys for Defendant

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on August 17, 2007, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Tara K. Hogan