# In the United States Court of Federal Claims

No. 05-248C

(Filed: November 13, 2007)

| | | |
|---|---|---|
| *********************************** | * | |
| | * | Overtime Pay for Federal Firearms |
| JONATHAN D. ASTOR, et al., | * | Instructors; Fair Labor Standards Act; |
| | * | Applicability of Professional |
| Plaintiffs, | * | Exemption for Teachers; Department |
| | * | of Labor and Office of Personnel |
| v. | * | Management Regulations; Burden of |
| | * | Proof |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| *********************************** | * | |

*Molly A. Elkin*, with whom was *Gregory K. McGillivary*, Woodley & McGillivary, Washington, D.C., for Plaintiffs.

*Tara K. Hogan*, with whom were *Peter D. Keisler*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Franklin E. White, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., and *Margaret Wright*, Of Counsel, Federal Law Enforcement Training Center, for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

This case presents the question of whether firearms instructors at the Federal Law Enforcement Training Center ("FLETC"), Glynco, Georgia, are entitled to overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* Plaintiffs are 45 current or former GS-12 and GS-13 instructors in FLETC's Firearms Division. FLETC is a bureau within the Department of Homeland Security. Plaintiffs claim one-and-one-half times their normal hourly rate for hours worked in excess of 40 hours per week or eight hours per day from February 23, 2002 to the present. See 29 U.S.C. § 207. Defendant opposes Plaintiffs' claim and contends that the firearms instructors are exempt from FLSA's overtime pay requirement because they are "teachers" falling within the

exemption for "professional" employees under 29 U.S.C. § 213(a). The case is before the Court on the parties' cross-motions for summary judgment.[1]

The material facts are not in dispute. The Court must determine whether Plaintiffs' daily duties as firearms instructors qualify them as teachers under FLSA's professional exemption. This determination is governed by pertinent Department of Labor ("DOL") and Office of Personnel Management ("OPM") regulations, and is a question of law. See Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986) (application of FLSA overtime benefits to "seamen" presented a legal question). The case therefore is ripe for summary adjudication. The applicable regulations, however, are extensive.

When Congress enacted the FLSA in 1938, it authorized DOL to define the positions that would qualify for the professional exemption. In 1974, Congress extended FLSA's coverage to federal government employees, and OPM began administering the FLSA for those employees. The post-1974 DOL and OPM regulations explicitly include "teachers" at an "educational establishment" under the professional exemption. 29 C.F.R. § 541.3(a)(3) (pre-2004); 29 C.F.R. § 541.303(a) (2004); 5 C.F.R. § 551.207 (pre-2007); 5 C.F.R. § 551.208(h) (Oct. 2007).[2] If the firearms instructors are deemed "teachers," and if FLETC is deemed an "educational establishment," then Plaintiffs are exempt from the overtime provisions of the FLSA, and they cannot recover. If Plaintiffs do not fall under these exemption requirements, then they are entitled to overtime pay. If Plaintiffs recover, the Court also must determine whether they are entitled to interest under the Back Pay Act, 5 U.S.C. § 5596.

Plaintiffs argue that they do not qualify as "teachers" under either the OPM or DOL regulations because they do not possess the necessary teacher qualifications, and their "primary duty" does not involve the "imparting of knowledge" through the exercise of "independent judgment and discretion." In particular, Plaintiffs rely on OPM's classification of FLETC firearms instructors in the Law Enforcement series of occupational codes, rather than the Education series, as evidence that Plaintiffs should not be considered FLSA exempt

---

[1] One plaintiff, Debra Roberts, is a GS-9 Training Technician, not an instructor. Two other plaintiffs, Iris Caballero and Steven Didier, did not work as FLETC firearms instructors during the time period relevant in this case. Accordingly, the parties have agreed to dismiss these three plaintiffs from the case. Oral Argument, Sept. 30, 2007, Tr. 26.

[2] The DOL and OPM regulations applying the "professional" exemption have changed in 2004 and 2007 respectively. These regulations will be cited herein as follows: (1) DOL pre-2004 amendment regulations ("pre-2004"), (2) DOL post-2004 amendment regulations through present ("2004"), (3) OPM pre-October 2007 amendment regulations ("pre-2007"), and (4) OPM post-October 2007 amendment regulations ("Oct. 2007").

teachers. Plaintiffs further contend that FLETC does not qualify as an "educational establishment" under DOL's regulations, because FLETC does not offer any degree, educational credit, or firearms license to the law enforcement officers enrolled in its courses.

In contrast, Defendant argues that Plaintiffs fall under the professional exemption in 29 U.S.C. § 213(a) and therefore should not receive overtime pay for their additional hours worked. Defendant asserts that Plaintiffs are FLSA exempt teachers as defined by the OPM and DOL regulations because their primary responsibility is to teach all levels of students all aspects of firearms, including safe use, accuracy, and justifiable use, as well as advanced tactics. Defendant points to FLETC's recent accreditation as a law enforcement training institutions as evidence that it meets the definition of "educational establishment" under the DOL regulations.

For the reasons explained below, the Court finds that there are no genuine issues of material fact, and that Plaintiffs are entitled to judgment as a matter of law. OPM's regulations provide that "[e]xemption criteria must be narrowly construed to apply only to those employees who are clearly within the terms and spirit of the exemption," and that "[t]he burden of proof rests with the agency that asserts the exemption." 5 C.F.R. § 551.202(b)-(c) (same in both the pre- and post-Oct. 2007 regulations). Defendant cannot meet its burden of proof that Plaintiffs should be classified as FLSA exempt teachers, since it fails on both prongs of OPM's teacher professional exemption test. Namely, Defendant cannot show that (1) Plaintiffs qualify as "teachers" engaged in the "imparting of knowledge," or (2) FLETC qualifies as an "educational establishment." Accordingly, Defendant's motion for summary judgment is DENIED, and Plaintiffs' cross-motion for summary judgment is GRANTED. Plaintiffs also are entitled to pre-judgment interest under the Back Pay Act, and reasonable attorneys' fees.

## Factual Background[3]

FLETC is a federal government training facility for law enforcement personnel from other federal agencies. Pltfs' and Def's Facts, ¶¶ 1-2. The instructors in the Firearms Division provide training to law enforcement officers in the safe handling, proficient application, and justifiable use of firearms, through a variety of basic and advanced courses. Id. ¶ 4. The individuals who come to FLETC are either provisional or permanent law enforcement employees of a federal, state, or local agency. Id. ¶ 3. FLETC does not offer

[3] The facts herein are taken from the parties' proposed findings of fact, the briefs on the cross-motions for summary judgment, and from an Appendix of documents that Plaintiffs and Defendant each filed with their respective briefs. To the extent that any fact issues exist, they have no bearing on the outcome of the case.

high school or college degrees, or firearms licenses to the law enforcement officers who complete training courses at FLETC. Id. ¶ 5.

The minimum educational requirement for FLETC firearms instructors is a high school degree, and neither teacher certification nor teaching experience is required. Id. ¶¶ 6-8. However, both law enforcement experience and firearms ability are prerequisites for all FLETC firearms instructors. Id. ¶ 8. In addition, all firearms instructors must complete an instructor training course and one year of on-the-job training before they receive their instructor certification. See id. ¶¶ 6, 9.

All FLETC firearms instructors are classified by OPM as either GS-1801-12 "Law Enforcement Specialist (Lead Instructor)" or GS-1801-13 "Law Enforcement Specialist (Senior Instructor)." See id. ¶¶ 10, 13. None of the Plaintiffs are classified in the GS-1700 occupational series, known as the "Education Group," which includes positions where the employee's primary responsibility is teaching or training. See id. ¶¶ 12-14. Instead, the Plaintiffs are classified within the GS-1800 "Investigation Group," which includes positions focusing on ensuring compliance with federal government laws and regulations. Id. ¶ 13. The duties and responsibilities of a position are the primary means used to classify federal government positions for human resource purposes. Id. ¶ 11.

Plaintiffs' primary job duty is to train law enforcement officers to use firearms properly, safely, and proficiently. Id. ¶ 15. Firearms instructors spend at least fifty to sixty percent of their work time teaching classes, serving as either "line instructors" or "course coordinators." Id. ¶ 16. Each firearms course has a specific lesson plan for the line instructor to follow, and when working with law enforcement officers on the firing range, the lesson plans contain a series of range commands to be called out by the instructors. Id. ¶¶ 18-20. All instructors are required to follow standard operating procedures governing punctuality, uniforms, and safety standards. Id. ¶ 23. Instructors spend less than one to three percent of their time updating existing lesson plans, which they review annually. Id. ¶¶ 25-26. Grading varies by course, and may include instructor critiques or pass/fail grades. See id. ¶ 27. Most courses, however, are graded based on shooting accuracy. Id. For example, in qualification courses, a practical exercise used to test the law enforcement officer's marksmanship ability, instructors must objectively score the hits on a target. Id. ¶¶ 29-30. The student's employing agency or FLETC determines a passing score, not the individual instructor. Id. ¶ 30.

On February 23, 2005, Plaintiffs filed suit in this Court for FLSA overtime compensation for the period February 23, 2002 through the present. See Pltfs' Fifth Amended Complaint ¶ 8; see also 29 U.S.C. § 255(a) (2007) (three-year statute of limitations for willful FLSA violations). During the relevant period, Plaintiffs worked scheduled overtime hours above their usual forty-hour work schedule without receiving FLSA overtime

compensation, and were instead paid for these additional hours at their regular pay rate. Pltfs' and Def's Facts, ¶ 34.

## Discussion

### I. Summary Judgment Standard

Summary judgment may be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The moving party bears the initial burden of establishing the absence of any disputes of material fact. Seal-Flex, Inc. v. Athletic Track and Court Constr., 98 F.3d 1318, 1321 (Fed. Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When the movant has met its initial burden, the non-movant must respond with sufficient evidence to show that there is a material factual dispute and that, on the non-movant's evidence, the movant is not entitled to judgment as a matter of law." Id. Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. Celotex, 477 U.S. at 325. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving a party, there is no "*genuine issue for trial*." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586-87 (1986) (emphasis in original).

Where both parties argue in favor of summary judgment and allege an absence of any genuine issues of material fact, the Court still must determine independently the appropriateness of summary disposition in a particular case. Prineville Sawmill Co., Inc. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988) (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987)). The Supreme Court has emphasized that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (internal citations omitted).

### II. The Fair Labor Standards Act

Enacted in 1938, the FLSA created minimum hourly wages and maximum hours in a work week for private sector employees. The FLSA requires employers to compensate employees for overtime work at a rate of at least one-and-one-half times the employee's regular rate of pay. See 29 U.S.C. § 207(a). However, the FLSA exempts from coverage "any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of administrative personnel or teacher in elementary or secondary schools)." Id. § 213(a). The 1974 FLSA Amendments made the

provisions of the FLSA applicable to federal government employees, including the Plaintiffs in the present matter. See id. § 203(e)(2)(A).

When Congress enacted the FLSA, it authorized DOL to administer the FLSA and to define the exemptions. See id. §§ 204, 213(a)(1). Under the 1974 Amendments, however, Congress authorized the former Civil Service Commission and later OPM to administer the FLSA for the federal workforce. Id. § 204(f). To avoid conflicts between the DOL and OPM regulations, Congress instructed OPM "to administer the 1974 Amendments in a manner consistent with the Department of Labor's administration of FLSA in the private sector." Lanehart v. Horner, 818 F.2d 1574, 1578 (Fed Cir. 1987) (citing H.R. Rep. No. 913 at 28, *reprinted in* 1974 U.S.C.C.A.N. 2811, 2837); see Abreu v. United States, 948 F.2d 1229, 1231 n.6 (Fed Cir. 1991) (noting the legislative history of the 1974 Amendments reflected Congress's desire that OPM exercise its administrative powers consistently with DOL, "to assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy."); Zumerling v. Devine, 769 F.2d 745, 750 (Fed. Cir. 1985) (finding OPM's interpretive guidelines should "harmonize with the statute's origin and purpose" as well as with the Secretary of Labor's regulations). This requirement for consistency mandates that courts scrutinize OPM's regulations only where OPM has impermissibly deviated from DOL's regulations. See Adams v. United States, 36 Fed. Cl. 91, 97 (1996).

### A. The FLSA's Presumption of Nonexemption and Defendant's Burden of Proof

An FLSA exemption may be asserted as an affirmative defense to the presumed obligation of an employer to pay overtime. See Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974). The employer bears the burden of proving by clear and convincing evidence that an employee meets the criteria for an FLSA exemption. Shockley v. Newport News, 997 F.2d 18, 21 (4th Cir. 1993); Berg v. Newman, 982 F.2d 500, 503 (Fed Cir. 1992). Moreover, exemption criteria must be "narrowly construed to apply only to those employees who are clearly within the term and spirit of the exemption," in order to further Congress's goal of providing broad federal employment protection. 5 C.F.R. § 551.202(b) (same in both the pre- and post-Oct. 2007 regulations); see Shockley, 977 F.2d at 24; see also Phillips v. Walling, 324 U.S. 490, 493 (1945) (narrowly construing exemptions from humanitarian and remedial legislation such as FLSA in order to give due regard to the plain meaning of statutory language and the intent of Congress); Bull v. United States, 63 Fed. Cl. 580, 588 (2005) (OPM regulations should be "'narrowly construed' consistent with the statutory presumption that FLSA coverage exists."). Under OPM's regulations, "[a]n employee who clearly meets the criteria for exemption must be designated FLSA exempt. [But] [i]f there

is reasonable doubt as to whether an employee meets the criteria for exemption, the employee should be designated FLSA nonexempt." 5 C.F.R. § 551.202(d) (same in both the pre- and post-Oct. 2007 regulations). Thus, the FLSA establishes a presumption of nonexempt status, which the employer must overcome by proving each element of a claimed exemption. See Walling v. Gen. Indus. Co., 330 U.S. 545, 547-48 (1947).

The burden of proving that Plaintiffs meet the FLSA teacher professional exemption rests with Defendant. See 5 C.F.R. § 551.202(c) (burden of proving all FLSA exemptions under OPM regulations "rests with the agency that asserts the exemption"). Accordingly, the Court may grant summary judgment for Plaintiffs unless Defendant presents evidence creating a genuine issue of material fact on whether Plaintiffs meet one element of the exemption criteria. See Martin v. Indiana Michigan Power Co., 381 F.3d 574, 578 (6th Cir. 2004). If Defendant fails to proffer such evidence, not only must its motion for summary judgment be denied, but summary judgment for Plaintiffs must be granted. Id. at 578.

B. OPM's FLSA Professional Exemption Regulations

Effective October 17, 2007, OPM amended its FLSA regulations in order to "update and harmonize OPM's regulations with the [DOL's] regulations issued under the Fair Labor Standards Act." 72 Fed. Reg. 52,753, 52,753 (proposed May 26, 2006) (to be codified at 5 C.F.R. pt. 551). Additionally, OPM sought to provide "a clearer understanding of coverage for executive, administrative and professional employees by adding definitions and examples" to its existing FLSA exemption regulations. Id. However, the Court must apply FLSA regulations as they existed during the relevant time in which the Plaintiffs' claims arose. See In re Wal-Mart Stores, Inc., 395 F.3d 1177, 1180 n.2 (10th Cir. 2005) (applying pre-2004 DOL FLSA regulations to plaintiffs' claims arising from 1993-1998); Massie v. Bd. of Trustees, 357 F.Supp.2d 878, 880, 882 n.1 (W.D.N.C. 2005) (applying pre-2004 DOL FLSA regulations to plaintiff's claims arising from 1999-2003). In this case, the relevant period spans from February 23, 2002 to the present. See 29 U.S.C. § 255(a) (stating that causes of action arising out of willful FLSA violations must be commenced within three years after the cause of action accrued). The Court therefore must apply both sets of OPM FLSA regulations, before and after October 17, 2007.

OPM's pre-October 2007 regulations defined an FLSA exempt "professional" as: "[A]n employee who meets [the four criteria of the learned professional test], *or* any teacher who is engaged in the imparting of knowledge or in the administration of an academic program in a school system or educational establishment." 5 C.F.R. § 551.207 (pre-2007) (emphasis added). The plain language of the regulation sets a different standard for teachers from other learned professionals required to meet a four-part test. The four criteria of the "learned professional" test included the: (1) primary duty test, (2) intellectual and varied work test, (3) discretion and independent judgment test, and (4) salary test. See 5 C.F.R. §

551.207(a)-(d) (pre-2007); 5 C.F.R. § 551.208(a) (Oct. 2007) (retaining these same criteria for determining "learned professionals" in the amended OPM professional exemption regulations but eliminating (4), the salary test).

The revised OPM regulations create a separate section for "teachers" under the professional exemption, at 5 C.F.R. § 551.208(h), as a category within the expanded list of "learned professional" occupations. See 5 C.F.R. § 551.208 (Oct. 2007). Similar to the corresponding DOL regulations, the revised OPM regulations define a "teacher" as "any employee with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment by which the employee is employed." Id. § 551.208(h) (Oct. 2007).

The revised OPM regulations also adopt the list of instructors set forth in the corresponding DOL regulations, expanding beyond traditional academic teachers, that may qualify as FLSA exempt teachers. See 5 C.F.R. § 551.208(h)(1) (Oct. 2007); 29 C.F.R. § 541.303(b) (2004). Relevant to this case, both the OPM and DOL regulations explicitly exempt: teachers of skilled and semi-skilled trades and occupations, teachers engaged in automobile driving instruction, and aircraft flight instructors. 5 C.F.R. § 551.208(h)(1) (Oct. 2007); 29 C.F.R. § 541.303(b) (2004). Still, both sets of regulations maintain a focus on traditional academic teachers when identifying the individuals contemplated as being within the scope of the exemption for teaching professionals. Both OPM and DOL note that an employee in possession of an elementary or secondary teacher's certificate clearly is within the professional teacher exemption, as are nursery school teachers, music instructors, and faculty members engaged as teachers but who also spend considerable time coaching student athletic teams or moderating school organizations. See 5 C.F.R. § 551.208(h)(1)-(2) (Oct. 2007); 29 C.F.R. § 541.303(b)-(c) (2004).

In another section, not included in DOL's regulations, OPM makes clear that "exempt teachers do not include teachers of skilled and semi-skilled trade, craft, and laboring occupations when the paramount knowledge is the knowledge of and the ability to perform the trade, craft, or laboring occupation." 5 C.F.R. § 551.208(h)(3) (Oct. 2007) (explaining that the teacher position is FLSA exempt if the " primary requirement" of the instructor is the ability to instruct, as opposed to the knowledge of and ability to perform a trade, craft, or laboring occupation).

The Court's focus when applying OPM's professional exemption regulations is whether Plaintiffs qualify as "teachers" under the professional exemption by meeting OPM's two-part test, which is the same in both sets of regulations, requiring that: (1) Plaintiffs be "engaged in the imparting of knowledge" and (2) within an "educational establishment." See 5 C.F.R. § 551.207 (pre-2007); 5 C.F.R. § 551.208(h) (Oct. 2007). Without explicitly

applying the four criteria designed for non-teacher learned professionals, Plaintiffs borrow two of the four criteria, the "primary duty" and "independent discretion and judgment" tests, from the DOL regulations and argue for their applicability in this case. See Pltfs' Motion at 17, 19. Plaintiffs also rely on the revised OPM regulations to argue that FLETC firearms instructors are engaged in "training" employees rather than "teaching" the law enforcement officers a new occupation. Id. at 20. Defendant rejects any application of the OPM "learned professional test" but accepts the "primary duty" test as it is set forth in DOL's definition of "teacher," in arguing that Plaintiffs are FLSA exempt because their "primary duty" is imparting knowledge of firearms. See Def's Motion at 7.

The relevant OPM and DOL regulations here are not in conflict, and therefore, the OPM regulations are the primary source of guidance for the Court's analysis. See Adams v. United States, 36 Fed. Cl. 91, 97 (1996) (requiring courts first to compare OPM's FLSA regulations with the corresponding DOL FLSA regulations to ensure there is no impermissible conflict). The Court finds that both sets of OPM regulations (pre- and post-October 2007) governing the FLSA professional exemption borrow heavily from the corresponding DOL professional exemption regulations. The amended OPM regulations duplicate the amended DOL regulations almost entirely, but include one additional section. See 5 C.F.R. § 551.208(h) (Oct. 2007); 29 C.F.R. § 541.303 (2004). Moreover, OPM's pre-October 2007 definition of "teacher" contains language taken directly from DOL's pre-existing FLSA definition of "teacher" under the professional exemption. See 5 C.F.R. § 551.207 (pre-Oct. 2007); 29 C.F.R. § 541.303(a) (2004) (defining "teacher" as one participating in the "activity of imparting knowledge" within "an educational establishment by which the employee is employed."). Thus, the Court will look to DOL's regulations for guidance in interpreting the governing OPM regulations defining the teacher professional exemption. The Court will also rely on DOL's regulations for explanation of such key terms as "engaged in the imparting of knowledge" and "educational establishment," as used in both the OPM and DOL teacher professional exemption regulations. See Bates v. United States, 60 Fed. Cl. 319, 322 n.3 (2004) ("[I]t is appropriate to look to [DOL regulations] for persuasive guidance where the OPM regulations are unclear."); Adams v. United States, 26 Cl. Ct. 782, 786 (1992) (finding that even where OPM regulations are consistent with DOL regulations, "DOL regulations can be used to shed light on the [FLSA] statute.").

### C. DOL's FLSA Professional Exemption Regulations

DOL revised its regulations defining the professional exemption effective August 23, 2004. See 69 Fed. Reg. 22,122 (proposed Apr. 23, 2004). However, as discussed above in connection with OPM's amended regulations, the Court must apply the DOL's regulations as they existed during the relevant time in which the Plaintiffs' claims arose. See In re Wal-Mart Stores, 395 F.3d at 1180 n.2 (applying pre-2004 DOL FLSA regulations to plaintiffs' claims arising from 1993-1998); Massie v. Bd. of Trustees, 357 F.Supp.2d 878, 882 n.1

(W.D.N.C. 2005) (applying pre-2004 DOL FLSA regulations to plaintiff's claims arising from 1999-2003). The relevant period in this case spans from February 23, 2002 through the present, therefore, the Court must apply both sets of DOL regulations. See 29 U.S.C. § 255(a) (setting three-year statute of limitations for willful FLSA violations).

Under both sets of DOL regulations, before and after August 23, 2004, in order to meet the first prong of FLSA's teacher professional exemption, the employee must have a "primary duty" of: "teaching, tutoring, instructing or lecturing in the activity of imparting knowledge" and be "employed and engaged in this activity as a teacher in an 'educational establishment' by which the employee is employed." 29 C.F.R. § 541.303(a) (2004) (internal quotations added); see 29 C.F.R. § 541.3(a)(3) (pre-2004) (including school system and institution as the places of employment for FLSA exempt teachers); 29 C.F.R. § 541.304(b) (pre-2004) ("The 'primary duty' of an employee as a teacher must be that of activity in the field of teaching. . . . [E]mployment and engagement in the activity of imparting knowledge as a primary duty shall be determinative with respect to employment [under the professional teacher exemption].").

The pre-2004 DOL regulations included three additional requirements, in addition to meeting the teacher "primary duty" test, similar to the "learned professional" test of the OPM regulations. See 29 C.F.R. § 541.3 (pre-2004). All employers of exempt "professional" employees were also required to show that the employee's work: (1) required the consistent exercise of discretion and judgment in its performance, (2) was predominantly intellectual and varied in character, and (3) met a salary test. See id. § 541.3(b)-(e) (pre-2004). Teachers, however, were exempt from the salary test. See id. § 541.314(a) (pre-2004).

The revised 2004 DOL regulations clearly separate the "teacher" exemption from the "learned professional" exemption. See 29 C.F.R. § 541.301 (2004); 29 C.F.R. § 541.303 (2004). For teachers, now placed in subpart 541.303, the regulations focus solely on the "primary duty" test. In contrast, DOL modified the learned professional exemption to track the pre-2004 learned professional duties test, listing separately three required elements. See 29 C.F.R. § 541.301 (2004); 69 Fed. Reg. at 22,148. The amended regulations only require the "consistent exercise of discretion and judgment" for learned professionals, not teachers. See 29 C.F.R. § 541.301(a)-(b) (2004) (as part of the definition of "work requiring advanced knowledge," one of three essential elements of the learned professional primary duty test). However, when issuing the amended regulations, DOL noted that it had been "unable to identify any occupation that would meet the primary duty test for the professional exemption, but not require the consistent exercise of discretion and judgment." 69 Fed. Reg. at 22,151. The Court therefore finds that it may properly consider the "consistent exercise of discretion and judgment," as a qualifying factor for FLSA exempt teachers under both sets of DOL regulations.

Thus, under the governing OPM regulations, Defendant must meet a two-part test to satisfy its burden of proof to the claimed professional exemption. In order to properly qualify Plaintiffs as FLSA exempt teachers Defendant must show that: (1) Plaintiffs are "engaged in the imparting of knowledge," and (2) FLETC is an "educational establishment." See 5 C.F.R. § 551.207 (pre-2007); 5 C.F.R. § 551.208(h) (Oct. 2007). However, the Court will look to the "primary duty" and "discretion and independent judgment" tests detailed in the corresponding DOL regulations to determine whether Plaintiffs' job duties as FLETC firearms instructors render them "teachers" engaging in the "imparting of knowledge." See 29 C.F.R. § 541.303(a) (2004); 29 C.F.R. § 541.3(a)(3) (pre-2004). As discussed in Part IV of this opinion, the Court must also look to DOL's regulations to define "educational establishment," because the OPM regulations do not elaborate on this term. See 29 C.F.R. § 541.204(b) (2004).

## III. Plaintiffs Do Not Qualify as "Teachers" Engaged in the "Imparting of Knowledge" under OPM's FLSA Regulations.

Both Plaintiffs and Defendant rely on the "primary duty" test to determine whether Plaintiffs qualify as FLSA exempt "teachers" under the professional exemption. See Pltfs' Motion at 17-19; Def's Motion at 7-8. Included in both the OPM and DOL regulations, the Court agrees that the "primary duty" test provides the starting point for determining if Plaintiffs qualify as FLSA exempt "teachers." See 5 C.F.R. §§ 555.207 (pre-2007), 5 C.F.R. 208(h) (Oct. 2007); 29 C.F.R. § 541.303(a) (2004). Although Defendant expressly rejects the "discretion and independent judgment" test cited by Plaintiffs, the Court finds that because the relevant period includes the pre-2004 DOL regulations, this test also offers insight on whether Plaintiffs qualify as FLSA exempt "teachers" engaged in the "imparting of knowledge" under OPM's regulations. See Def's Reply at 4; 5 C.F.R. § 551.207 (pre-2007); 5 C.F.R. § 551.208(h) (Oct. 2007).

### A. The "Primary Duty" Test

OPM's regulations define "primary duty" as the "duty that constitutes the major part (over 50 percent) of an employee's work." 5 C.F.R. § 551.104 (same definition in the pre- and post-Oct. 2007 regulations). DOL's regulations further define an employee's primary duty as work that is the "principal, main, major or most important duty that the employee performs," and note that employees who spend "more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." 29 C.F.R. § 541.700(a)-(b) (2004). Factors to consider in determining an employee's primary duty include: the relative importance of the exempt duties as compared with other job duties, the amount of time spent performing exempt work, and the employee's relative freedom from direct supervision. See id. § 541.700(a).

However, an employee's primary duty characterization remains a case-by-case determination. As DOL's professional exemption regulations explain, "[a] job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part." 29 C.F.R. § 541.2 (2004). Whether a particular duty is considered professional is a question of law, and governed by the pertinent regulations promulgated by OPM and DOL. See Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986) (finding that whether plaintiffs' job duties entitled them to FLSA overtime benefits reserved for "seamen" presented a legal question).

1. OPM's Classification Standards

Plaintiffs point to OPM's own classification of positions in support of their nonexempt status under FLSA. See Pltfs' Motion at 22-23. OPM's position classification standards were developed as a means of classifying federal government positions into the appropriate series, titles, and grades. See Pltfs' and Def's Facts, ¶ 11. The duties and responsibilities of the position are the "driving force" in terms of classifying the position in the proper occupational series. Id. Thus, Plaintiffs' OPM classification is instructive as to their "primary duty," from the view of the employer responsible for designating an employee's FLSA exemption status. See 5 C.F.R. § 551.104 (same definition in the pre-and post-Oct. 2007 regulations) (defining "FLSA exemption status" as an "employee's designation by the employing agency as either FLSA exempt or FLSA nonexempt from the minimum wage and overtime provisions of the [FLSA].").

Under OPM's position classification standards, the GS-1700 series covers the "Education Group," including positions where the "paramount requirement of the position is knowledge of or skill in education, training, or instruction processes." Handbook of Occupational Groups and Families at 85 (2002 ed.); see Pltfs' and Def's Facts, ¶ 12. The 1800 occupational series, where Plaintiffs' jobs are placed, covers the "Investigation Group," which includes occupations established primarily to enforce compliance with federal government laws and regulations. See Handbook of Occupational Groups and Families at 87; Pltfs' and Def's Facts, ¶ 13.

All firearms instructors employed by FLETC are classified either as GS-1801-12 Law Enforcement Specialist (Instructor) or GS-1801-13 Law Enforcement Specialist (Senior Instructor). Pltfs' and Def's Facts, ¶¶ 10, 13. The two positions have the same description of qualifications, functions and duties, except that Grade 13 senior instructors specialize in a major topical area of firearms training. See Def's App. at 65. According to the agency position description, the major function of FLETC firearms instructors is to provide high

quality training to federal agency law enforcement officers and to instill the technical and analytical knowledge and skills needed for the highest possible proficiency. See id. The job description lists such duties as developing course materials and lesson plans, researching and updating information for course materials and lesson plans, and evaluating student performance. See id. at 65-66.

2. Daily Duties

Upon closer examination of Plaintiffs' actual daily job duties, however, it is not clear that their "primary duty" is "teaching" students. See 5 C.F.R. § 555.207 (pre-2007); 5 C.F.R. § 208(h) (Oct. 2007); 29 C.F.R. §303(a) (2004). It is undisputed that FLETC firearms instructors' primary job duty is to train law enforcement officers to use firearms properly, safely, and proficiently. Pltfs' and Def's Facts, ¶ 15. In this capacity, the instructors serve as either "line instructors" or "course coordinators" for various basic and advanced firearms training courses offered at FLTEC. Id. ¶ 16. Each course has a specific lesson plan that all instructors follow. Id. ¶ 18. When they serve as "line instructors," Plaintiffs have a dual responsibility of safety and training, ensuring that the law enforcement officers shooting at the targets are handling the weapons in a safe manner and training the officers in marksmanship skills. Id. ¶ 17. When they serve as "course coordinators," Plaintiffs' primary responsibility is to oversee a training course, which includes a two-hour lecture, setting up the firing range, and keeping track of weapons and ammunition. Id. ¶ 20. Course coordinators also work from the "tower," a control booth near the firing line where the coordinator calls out range commands from the standard lesson plans. Id.

Although Defendant asserts that firearms instructors typically spend "at least fifty to sixty percent of their work time teaching classes," the instructors' affidavits explain that at least seventy percent, and even one hundred percent for some instructors, of this "teaching" time is spent on the firing line. See Pltfs' and Def's Facts, ¶ 16; Pltfs' App. at 2, 8, 13, 20. Only one to three percent of the firearms instructors' time is spent updating or developing new lesson plans. See Pltfs' and Def's Facts, ¶ 26. These lesson plans are reviewed annually, but the content stays the same unless a new weapon, technology, or type of threat is identified. Id. ¶¶ 25-26.

B. The "Discretion and Independent Judgment" Test

Under the pre-2004 DOL regulations, the consistent exercise of "discretion and judgment" was required to qualify any employee under the "learned professional" exemption, including teachers. See 29 C.F.R. § 541.3 (pre-2004). OPM's professional exemption regulations requiring other learned professionals, but not teachers, to meet the "discretion and independent judgment" test, point to the FLSA administrative exemption regulations for further definition of the phrase "discretion and independent judgment." See 5 C.F.R. §§ 551.104, 551.206, 551.207(c) (pre-2007). The pre-October 2007 OPM regulations merely

define the "discretion and independent judgment" test as being met when the employee "frequently exercises discretion and independent judgment, under only general supervision, in performing the normal day-to-day work." Id. § 551.206(c). The revised section 551.206(c) explains that "the exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision." 5 C.F.R. § 551.206(c) (Oct. 2007). More importantly, "employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits . . . will be nonexempt." Id. § 551.206(f).

As discussed in Section II, C above, the revised DOL regulations do not specifically require "teachers" to consistently exercise discretion and judgment to qualify for the teacher professional exemption, only other learned professionals. See 29 C.F.R. §§ 541.301(a)-(b), 541.303 (2004). The pre-2004 DOL professional exemption regulations, however, did require all FLSA exempt professionals, including teachers, to consistently exercise "discretion and judgment." 29 C.F.R. § 541.3(b), (e) (pre-2004). These regulations did not explicitly define the phrase "discretion and judgment" as used in section 541.3(b) and (e), but stated that "[a] prime characteristic of professional work is the fact that the employee does apply his special knowledge or talents with discretion and judgment [and that] [p]urely mechanical or routine work is not professional." Id. § 541.305(b).

Although the agency job description for the FLETC firearms instructors implies a routine exercise of "discretion and independent judgment" by the instructors, the description given by the firearms instructors themselves of their actual daily work demonstrates otherwise. In fact, one firearms instructor refuted the agency's position description almost in its entirety, stating during his deposition that he does not develop course material, initiate content changes, develop other approaches and methods of instruction, develop lesson plans, do individual research, participate in committees or coordinate activities, all duties listed in the agency position description. See Def's App. at 65-66, 293. Similar to the space shuttle mission simulators in Hashop v. Rockwell, Plaintiffs "use their advanced training and experience to make decisions, but only within a well-defined framework." Hashop v. Rockwell Space Operations Co., 867 F.Supp. 1287, 1298 (S.D. Tex. 1994) (holding plaintiffs to be FLSA nonexempt teachers under the old DOL "primary duty" test, finding that plaintiffs did not exercise discretion and judgment in their duties).

FLETC firearms instructors conduct the training courses in conformance with the written lesson plans and standard operating procedures ("SOPs") that cover a range of subject matters, including punctuality, uniforms, and safety standards. See Pltfs' and Def's Facts, ¶ 23. Failure to follow the SOPs or lesson plans could subject an instructor to discipline, depending on the seriousness of the infraction. See id. ¶ 23. The instructors conduct little, if any, research for the courses they teach. Id. ¶ 24. Lesson plans are reviewed once a year, but typically undergo little revision in content. See id. ¶ 25. Instructors do not assign grades or prepare report cards for the law enforcement officers enrolled in their

courses, but in select courses FLETC firearms instructors do give pass/fail grades or critiques. See id. ¶ 27. The law enforcement officer's employing agency, not the firearms instructors, determine whether the officers who train at FLETC are qualified for their positions. Id. ¶ 31. Moreover, neither the law enforcement officers nor the firearms instructors decide whether the officer may attend FLETC. Rather, the officer's employing agency chooses the law enforcement officers who will attend FLETC, based on the agency's determination of its needs, and which course the officer will attend. See Def's App. at 330. Finally, the employing agency pays the officer's regular salary while the officer attends the FLETC training course. See Pltfs' App. at 5.

Most courses are "qualification" type courses testing an officer's marksmanship proficiency. When conducting the officer's proficiency test (known as a "course of fire") for qualification, firearms instructors must call out the range commands verbatim from the lesson plans. See Pltfs' and Def's Facts, ¶¶ 19, 29. The law enforcement officers are objectively "scored" in the qualification courses by the firearms instructors adding up the points (bullet holes) on the officer's target, and the passing score is set by the officer's employing agency or FLETC, not by the individual firearms instructor. See id. ¶¶ 27, 30.

### C. Application under OPM's FLSA Regulations

Defendant has failed to demonstrate that the "primary duty" of the FLETC firearms instructors is the "imparting of knowledge," the first prong of OPM's teacher professional exemption test. The essential knowledge that the instructors are "imparting" to students is their knowledge of firearms generally and their ability to use these firearm in a law enforcement setting. See Pltfs' and Def's Facts, ¶ 21. The instructors obtain this knowledge from their experience in the military or from their law enforcement backgrounds. See id. It is undisputed that the "primary duty" of the instructors is to train law enforcement officers in the safe and proficient use of firearms, with the majority of the instruction time typically spent on the firing range. See id. ¶ 15; Pltfs' App. at 2, 8, 13, 20. Finally, there is a demonstrated lack of "discretion and independent judgment" exercised by the instructors, since they follow standard detailed lesson plans and qualify officers by issuing verbatim commands, with an objective scoring system set by the officer's employing agency. See Pltfs' and Def's Facts, ¶¶ 19, 29-30.

Plaintiffs do not fit within the list of non-traditional academic teachers included within OPM's and DOL's teacher professional exemption regulations. See 5 C.F.R. § 551.208(h)(1) (Oct. 2007); 29 C.F.R. § 541.303(b) (2004). Unlike the students of semi-skilled trade instructors, automobile driving instructors, and aircraft flight instructors, the law enforcement officers attending FLETC do not choose to take courses at FLETC on their own initiative and they remain paid employees of their home agencies for the duration of the training course.

See Def's App. at 330; Pltfs' App. at 5. The law enforcement officers are not seeking a career change or even learning a new skill, rather, they are simply being trained in the safe, proficient, and justifiable use of the firearms that are a necessary component to their existing employment. See Pltfs' and Def's Facts, ¶ 15.

The revised OPM regulations make clear that Plaintiffs cannot be considered FLSA exempt teachers under the professional exemption. See 5 C.F.R. § 551.208(h) (Oct. 2007). As stated in section 551.208(h)(3), "[e]xempt teachers do not include teachers of skilled and semi-skilled trade, craft, and laboring occupations when the paramount knowledge is the knowledge of and the ability to perform the trade, craft, or laboring occupation. Conversely, if the primary requirement of the post-secondary instructor is the ability to instruct, as opposed to knowledge of and ability to perform a trade, craft, or laboring occupation, then the position may be exempt." Id.

Although "experience which demonstrates the ability to train and/or instruct" is required of all FLETC firearms instructors, law enforcement experience and law enforcement techniques expertise, specifically firearms expertise, are described as "necessary" in the agency position description. See Def's App. at 73; Pltfs' and Def's Facts, ¶ 8. It is undisputed that the primary duty of the FLETC firearms instructors is to train law enforcement officers to use firearms properly, safely, and proficiently. Pltfs' and Def's Facts, ¶ 15. Thus, Plaintiffs fall within the category of nonexempt teachers, whose paramount knowledge is the knowledge of the ability to perform a trade, craft, or laboring occupation, such as firearms use. See 5 C.F.R. § 551.208(h)(3) (Oct. 2007); Pltfs' and Def's Facts, ¶ 15.

Under the governing OPM regulations, every federal employee is presumed to be FLSA nonexempt, unless the employing agency proves otherwise. See 5 C.F.R. § 551.202(a), (c) (same under both the pre- and post-Oct. 2007 regulations). Furthermore, the exemption criteria explained above must be "narrowly construed" to apply "only to those employees who are *clearly within the terms and spirit of the exemption*." Id. § 551.202(b) (emphasis added). Although the safe handling and proficient use of firearms certainly is a skill and one in which the FLETC firearms instructors are training the federal law enforcement officers, the fact that this training takes place predominantly on the firing range and requires minimal class preparation by the instructors leads the Court to find that there is substantial doubt whether the instructors meet the criteria for exemption. Thus, the employees should be designated nonexempt under the OPM regulations covering the teacher professional exemption, and entitled to overtime compensation.

IV. FLETC Does Not Qualify as an "Educational Establishment" under OPM's FLSA Regulations.

Under both the OPM and DOL regulations for FLSA exempt teachers, the second question the Court must address is whether FLETC qualifies as an "educational establishment." OPM had not defined this term until the amended regulations took effect on October 17, 2007. In the amended section 551.104, OPM defines the term "educational establishment" as "a nursery school, an elementary or secondary school system, an institution of higher education, other educational institutions, and *in certain circumstances*, training facilities."[4] 5 C.F.R. § 551.104 (Oct. 2007) (emphasis added).

Given the recent adoption of this change to OPM's regulations, the Court agrees with both Plaintiffs' and Defendant's reliance on the DOL teacher professional exemption regulations and ensuing case law as the most useful tools for guiding the Court's analysis of whether FLETC qualifies as an "educational establishment" under OPM's FLSA regulations. See Pltfs' Motion at 28; Def's Motion at 16. The DOL regulations explain that "educational establishments" at which exempt teaching professionals are employed include not only elementary or secondary school systems and institutions of higher education, but also other educational institutions, such as special schools or post-secondary career programs. 29 C.F.R. § 541.204(b) (2004). The regulations provide that the relevant factors in determining whether post-secondary career programs are "educational establishments" include whether the school is licensed by a state agency responsible for the state's educational system or accredited by a nationally recognized accrediting organization for career schools. Id.

Courts have interpreted the term "educational establishment" to extend beyond traditional schools, to include the educational division of a prison, a non-profit corporation offering continuing education courses for accountants and attorneys, and a tractor trailer driving school. See Wilks v. District of Columbia, 721 F.Supp. 1383, 1386 (D.D.C. 1989) (Department of Corrections educational program); Muller v. Amer. Mgmt. Ass'n Int'l, 368 F.Supp.2d 1166, 1175 (D. Kan. 2004) (non-profit corporation conducting continuing educational courses); Gonzales v. New England Tractor Trailer Training Sch., 932 F.Supp. 697, 702 (D. Md. 1996) (tractor trailer driving school). A closer examination of the relevant

---

[4] In the Comments section to the proposed rule, OPM notes that "[t]raining facilities vary widely within the Federal sector and are found in a number of different settings. These settings range from Department of Defense-operated primary and secondary schools and military technical training schools, to law enforcement training centers and adult training facilities operated by a variety of Federal agencies." 72 Fed. Reg. 52,753, 52,754. Given the wide variation in the facilities, OPM elected not to further define the term "educational establishment." Id.

case law, however, reveals that in each instance where the defendant-employer was found to meet DOL's definition of "educational establishment," three discernible factors were present.

First, the students enrolled in the school or program were seeking an educational degree or its equivalent, a type of license, or continuing educational credits. See Wilks, 712 F.Supp. at 1386 (finding that although no degrees were awarded, the nature of the program was "essentially a school"); Muller, 368 F.Supp.2d at 1176 (finding that although the educational seminars were offered by a non-profit corporation and no degrees were awarded, the attendees received continuing education units that could be used to satisfy professional continuing education requirements); Gonzales, 932 F.Supp. at 702 (noting that while the school was operating for-profit and not awarding credits or degrees, it "was in business for the purpose of teaching its students to become licensed over-the-road drivers.").

FLETC's Congressional mandate is to "provide a consolidated training facility for the benefit of all federal law enforcement agencies." Pltfs' and Def's Facts, ¶ 2. It is undisputed that FLETC is not a traditional "school" or part of a school system. Instead, the parties agree that it is a "training agency." See id. The law enforcement officers who come to FLETC cannot and do not obtain high school or college degrees, or firearms licenses upon completion of training at FLETC. Id. ¶ 5. Unlike the educational seminars in Muller, continuing education credits are not offered or earned at FLETC. See 368 F.Supp.2d at 1176. The fact that FLETC offers programs that are prerequisites to employment at many federal agencies and refresher courses to current law enforcement officers is not enough to transform FLETC into a "post-secondary career program." See Def's Reply at 11-12.

Second, in all of the cases where courts found non-traditional schools to qualify as an "educational establishment," the program's education accreditation credentials were much stronger than those presented by Defendant in this case. In Wilks, the prison's Office of Educational Services ran the program with teachers certified by the D.C. Public Schools. See 721 F.Supp. at 1386. In Muller, the corporation was chartered as an educational organization under the auspices of the State University of New York, and approved as a certified provider of continuing education. 368 F.Supp.2d at 1176. In Gonzales, the driving school was licensed by the Maryland Higher Education Commission as a career training school, and accredited by the Accrediting Commission of Career School and College of Technology, a nationally recognized educational accrediting organization. See 932 F.Supp. at 701. Even in the Department of Labor Wage and Hour Opinion[5] upon which Defendant relies, the FAA's air traffic controller training provided by a government contractor was considered a

[5] Opinions of the Administrator of the Wage and Hour Division interpreting FLSA are not controlling on this Court. However, at the Court's discretion the Court may look to the Administrator's opinions for guidance in interpreting DOL regulations. See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) (holding such opinions may have persuasive value if the Court finds that the position of the Administrator is well-considered and well-reasoned).

continuation of the students' Federal Aviation Academy training and was also funded by the FAA, thus justifying its classification as an "educational establishment" under FLSA. See DOL Op. Letter, 2004 WL 2146934 (June 2, 2004).

In contrast, FLETC earned its sole accreditation in March 2006, from the newly created Federal Law Enforcement Training Accreditation ("FLETA"). See Def's App. at 62. FLETA consists of a Board of Directors, comprised of representatives from various law enforcement agencies, that sets the standards of accreditation for law enforcement training facilities. See id. at 336. However, FLETA's accreditation recognizes FLTEC for having met the standards for law enforcement training centers, not those required of a school or vocational program. See Def's App. at 62; Pltfs' Motion at 29. Although FLETA is an independent body established by the Office of Management and Budget, irrespective of the fact that it is housed in the same complex as FLETC, it is not a "a nationally recognized accrediting organization for career schools." See 29 C.F.R. § 541.204(b) (2004); Def's Reply at 14.

Third, FLETC instructors are not required to possess any teaching credentials, such as degrees in education or teaching experience, or education beyond a high school degree. See Pltfs' and Def's Facts, ¶¶ 6-8; Wilks, 721 F.Supp. at 1386 (prison program's teachers required to be certified by the public school system and were "full-time professional educators"); Gonzales, 932 F.Supp. at 698 (driving instructors required to possess two years of practical experience and pass both a federal Department of Transportation written test and a road test). Instead, law enforcement experience, firearms expertise, and to a lesser degree, "experience which demonstrates the ability to train and/or instruct" are the only qualifications necessary to become a firearms instructor at FLETC. See Pltfs' and Def's Facts, ¶ 8; Def's App. at 73 (describing law enforcement experience and law enforcement techniques expertise as "necessary" qualifications). Instructors are issued a FLTEC Instructor Certificate upon successful completion of new instructor training, consisting primarily of a two-week introductory course known as the Firearms Instructor Training Program ("FTIP") and one year of on-the-job service. See Pltfs' and Def's Facts, ¶ 6; Def's App. at 339, 341.

Taken together, the undisputed absence of the three factors above prevents Defendant from prevailing in its argument that FLETC is a non-traditional school that still meets FLSA's requirements for an "educational establishment." As a training facility, FLETC does not possess any of the attributes typical of traditional schools, at least some of which must be present to qualify as an "educational establishment" under FLSA. See Hashop, 867 F.Supp. at 1295 n.4 (citing 29 C.F.R. § 541.301(g)(2) ("[I]t seems clear that such employment [as aircraft flight and automobile driving instructors] is assumed to take place in some organized 'school-like' setting.")). This is not one of the "certain circumstances" where a training facility constitutes an "educational establishment" under the revised OPM regulations. See 5 C.F.R. § 104 (Oct. 2007) (including some training facilities in the definition of educational establishment).

FLETC does not issue any degree, license, certification, or educational credits to its "students" nor does FLETC require its "teachers" to possess any of the credentials normally required of academic teachers. See Pltfs' and Def's Facts, ¶¶ 2, 5, 6-8; 29 C.F.R. § 541.204(b) (2004). Moreover, its recent accreditation as a law enforcement training center is not a sufficient substitute for the accreditation of a "a nationally recognized accrediting organization for career schools" cited in the DOL regulations. See 29 C.F.R. § 541.204(b) (2004). Thus, Defendant has failed to meet its burden of proving that a genuine issue of fact exists whether Plaintiffs meet the second prong of the OPM FLSA teacher professional exemption test, requiring teachers to teach at an "educational establishment." See 5 C.F.R. § 551.202(c) (same burden of proof in both the pre- and post-Oct. 2007 regulations); 5 C.F.R. § 551.207 (pre-2007); 5 C.F.R. § 551.208(h) (Oct. 2007). FLETC cannot be viewed as an "educational establishment" when narrowly construing the DOL regulations. See 5 C.F.R. § 551.202(c). Thus, summary judgment for Plaintiffs may also be granted on this prong of the OPM teacher professional exemption test.

V. Plaintiffs Are Entitled to Pre-Judgment Interest on their Overtime Pay Award under the Back Pay Act.

The Court now turns to the question of whether Plaintiffs are entitled to pre-judgment interest on their FLSA overtime back pay, pursuant to the Back Pay Act ("BPA"), 5 U.S.C. § 5596. The BPA provides recovery, with interest, to any government employee who has been affected by any "unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee." Id. § 5596(b)(1). "Unjustified or warranted personnel action" is defined as an act of commission or omission that an appropriate authority subsequently determines, on the basis of substantive or procedural defects, to have been unjustified or unwarranted under applicable law, rule, or regulation. 5 C.F.R. § 550.803. Such actions include personnel actions and pay actions, alone or in combination. Id.

As with all claims against the United States in its capacity as sovereign, Plaintiffs must show that Congress waived sovereign immunity for FLSA claims under the BPA. See United States v. Sherwood, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued."); see also Ledford v. United States, 297 F.3d 1378, 1381 (Fed Cir. 2002) (A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed."). However, Congress must separately waive immunity for awards of interest in a suit against the United States, either by statute or contract. See Library of Congress v. Shaw, 478 U.S. 310, 315-17 (1986). A waiver of sovereign immunity, moreover, must be strictly construed in favor of the sovereign. Orff v. United States, 545 U.S. 596, 601-02 (2005).

FLSA itself does not provide for recovery of interest within its provisions and does not waive sovereign immunity for suits against the Government for interest. See Doyle v. United States, 931 F.2d 1546, 1550-51 (Fed. Cir. 1991) (denying plaintiff interest on FLSA

liquidated damages under the FLSA's provisions). Although the BPA provides for a mandatory award of pre-judgment interest for anyone awarded back pay under the Act itself, the circuits have split in deciding whether a plaintiff may recover interest under the authority of the BPA if the case was not brought *under* the BPA. Some courts have held that the BPA serves as a congressional waiver of sovereign immunity from interest claims on awards arising under other statutes. See Woolf v. Bowles, 57 F.3d 407, 410 (4th Cir. 1995) (finding the BPA may waive immunity from interest recovery on Title VII and age discrimination failure-to-promote award where improperly-denied promotion was noncompetitive and mandatory); Brown v. Sec. of the Army, 918 F.2d 214, 218 (D.C. Cir. 1990) (holding that a plaintiff who otherwise meets the requirements of the BPA may recover interest via the BPA in a Title VII action); see also Social Security Admin. v. FLRA, 201 F.3d 465, 468 (D.C. Cir. 2000) (suggesting the BPA waives sovereign immunity from interest awards under statutes "such as the FLSA"); Edwards v. Lujan, 40 F.3d 1152, 1154 (10th Cir. 1994) (adopting Brown's holding that the BPA waives sovereign immunity against prejudgment interest on Title VII back pay awards). Other courts, however, have found the opposite to be true. See Arneson v. Callahan, 128 F.3d 1243, 1246 (8th Cir. 997) (finding the BPA must unequivocally express Congress's intent to waive sovereign immunity in the context of the sued-upon statute in order to receive interest pursuant to the BPA); Angelo v. United States, 57 Fed. Cl. 100, 110 (2003) (holding that the BPA must be construed as failing to provide the express waiver necessary for interest on FLSA back pay awards). The Federal Circuit has yet to squarely address this issue. Angelo, 57 Fed. Cl. at 110.

The issue presented is whether the BPA waives sovereign immunity for interest on back pay stemming from FLSA violations, which are brought pursuant to the FLSA, not the BPA itself. It is undisputed that Plaintiffs pled the agency's failure to pay overtime as violative of the FLSA. Pltfs' Motion at 32; see Pltfs' Fifth Amended Complaint ¶ 12 (seeking relief under 29 U.S.C. § 216(b), the FLSA's damages provision). Plaintiffs contend, however, that in the event the Court awards them back overtime compensation pursuant to the FLSA, the BPA still entitles them to interest in addition to the back pay. See Pltfs' Motion at 31-33. Defendant asserts that if the Court finds Plaintiffs are entitled to judgment in their favor under the FLSA, Plaintiffs are not entitled to prejudgment interest upon the amount recovered under the BPA. See Def's Motion at 18. Defendant emphasizes that Plaintiffs should be denied prejudgment interest because neither the BPA nor the FLSA waives the Government's sovereign immunity against interest claims for violations of the FLSA. See Def's Motion at 19-20.

The BPA includes a waiver of sovereign immunity as to interest on awards under the Act, but Plaintiffs must meet the BPA's three criteria for an award to bear interest: (1) the employee must have been affected by an unjustified or unwarranted personnel action; (2) the employee must have suffered a withdrawal or reduction of all or part of his pay; and (3) but for the action, the employee would not have experienced the withdrawal or reduction. See FLRA, 201 F.3d at 468. The Court finds that Defendant's failure to provide overtime compensation to Plaintiffs at the rate of one and one-half times their regular rate of pay

constituted an "unwarranted and unjustified personnel action" resulting in the "withdrawal or reduction of all or part of [their] pay." See 5 U.S.C. § 5596(b)(1); Pltfs' Motion at 32. But for Defendant's incorrect classification of Plaintiffs as FLSA exempt, Plaintiffs would not have experienced the denial of overtime pay for hours worked above their usual forty-hour work schedule. Pltfs' and Def's Facts, ¶ 34. Accordingly, the Court finds that Plaintiffs have met the standard for recovery of interest under the BPA.

The Court notes that Plaintiffs included the BPA in their complaint, in addition to their FLSA claim. See Pltfs' Fifth Amended Complaint ¶ 13; cf. Adams v. United States, 350 F.3d 1216, 1229-30 (Fed. Cir. 2003) (declining to address the issue of whether interest under the BPA is available as a remedy in FLSA suits because the plaintiff failed to plead the BPA in its complaint). The Court also recognizes that the FLSA provides a comprehensive remedy for FLSA violations, and does not include an express waiver of sovereign immunity for prejudgment interest claims. See Adams v. United States, 48 Fed. Cl. 602, 610 (2001) (noting that in addition to back pay, FLSA plaintiffs can seek liquidated damages and attorney's fees and costs under 29 U.S.C. § 216(b)). However, the Government offers no convincing reason why the BPA and the FLSA should not be read as complementary where, as here, plaintiffs are seeking interest on their back *pay* awards, not on a liquidated damages award. See Pltfs' Motion at 33 (agreeing that if liquidated damages are awarded in this matter Plaintiffs would not be entitled to interest in addition to liquidated damages); compare Brown, 918 F.2d at 216-18 (finding the BPA and Title VII to be complementary in back pay action), with FLRA, 201 F.3d at 472 (denying a BPA waiver of sovereign immunity for interest because plaintiff's FLSA liquidated damages were not "pay, allowances, or differentials" and the FLRA's failure to pay them in a timely manner was not a "withdrawal or reduction."), and Angelo, 57 Fed. Cl. at 111 (entitling prevailing plaintiffs to liquidated damages under the FLSA). The circumstances of this case fall squarely within the BPA's provisions, and as such, the Court finds that Plaintiffs should be awarded interest on their FLSA back overtime pay award.

## VI. Plaintiffs Are Entitled to Attorneys' Fees But Not Liquidated Damages.

The FLSA's section 216(b) provides that an individual whose employer violates section 207 of the FLSA is entitled to the unpaid overtime wages, an additional equal amount as liquidated damages, and attorneys' fees and costs, "as appropriate to effectuate the purposes of [the FLSA]." 29 U.S.C. § 216(b); O'Connor v. United States, 308 F.3d 1233, 1237 (Fed Cir. 2002); see Singer v. City of Waco, Tex., 324 F.3d 813, 829 n.10 (5th Cir. 2003) ("The FLSA requires an employer who violates the statute to pay attorney's fees."). In its discretion, however, the court may mitigate or deny liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his action or omission was not a violation of the [FLSA]." 29 U.S.C. § 260; Bull v. United States, 68 Fed. Cl. 212, 275 (2005) aff'd 479 F.3d 1365 (Fed Cir. 2007) (quoting § 260). Courts have found that the term "good faith," as used in section 260, means "an honest intention to ascertain

what the FLSA requires and to act in accordance with it." Bull, 68 Fed. Cl. at 275 citing Beebe v. United States, 640 F.2d 1283, 1295, 226 Ct. Cl. 308, 328 (1981). Whether an honest intention existed involves a subjective inquiry by the court. Id.

In their complaint, Plaintiffs seek liquidated damages and attorneys' fees and costs in addition to their back pay damages. See Pltfs' Fifth Amended Complaint ¶¶ 12, 14. The Court finds that section 216(b) entitles Plaintiffs to recover reasonable attorneys' fees and costs of this action, in addition to their back pay award, with interest under the BPA. However, the Court determines that Defendant acted in "good faith" or with "reasonable grounds for believing" that FLETC firearms instructors should be classified as FLSA exempt under the teacher professional exemption, given the nature of Plaintiffs' job descriptions and daily duties, as discussed throughout this opinion. See 29 U.S.C. § 260. Accordingly, the Court denies Plaintiffs' liquidated damages claim.

## Conclusion

Based on the foregoing, Defendant's motion for summary judgment is DENIED, and Plaintiffs' cross-motion for summary judgment is GRANTED. The parties shall, on or before December 13, 2007, consult and file a joint status report with the Court reflecting a calculation of damages for uncompensated overtime due each plaintiff to date. If for any reason the parties do not agree on any part of such calculations, the parties shall, on or before December 13, 2007, also present to the court such calculations as to which they do not agree accompanied by specific and complete statements explaining their respective positions. Plaintiffs' counsel also may submit calculations for pre-judgment interest and attorneys' fees. Costs are awarded to Plaintiffs.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge